**E. Stanton MAXEY, M.D., Plaintiff,**

v.

**Dan G. KADROVACH, David K. McAfee, M.D., and The Veterans Administration, An Agency of the United States of America, and The United States of America, Defendants.**

**Civ. No. 88–5034.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 13, 1988.

Wm. Jackson Butt, II, Davis, Cox & Wright, Fayetteville, Ark., for plaintiff.

Deborah J. Groom, Asst. U.S. Atty., Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I.  INTRODUCTION

Pending before the court is the defendant's motion to dismiss plaintiff's amended complaint on jurisdictional grounds, or alternatively for summary judgment.  For purposes of the court's discussion of the jurisdictional issues, it is assumed that the pertinent factual allegations of the amended complaint are true.

Plaintiff challenges, on several grounds, his termination from his employment as a probationary staff surgeon at the Veterans Administration Medical Center in Fayetteville, Arkansas.  The jurisdiction of the court is purportedly invoked pursuant to the First and Fifth Amendments to the Constitution of the United States, The Administrative Procedure Act, 5 U.S.C. § 701 et seq., and 28 U.S.C. § 1331.

Plaintiff alleges that he was hired pursuant to authority granted in 38 U.S.C. § 4104.  From October 26, 1986, to August 3, 1987, plaintiff was employed as a staff surgeon at the Veterans Administration Medical Center in Big Springs, Texas.  On August 3, 1987, plaintiff accepted an identical position with the VA facility in Fayetteville, Arkansas.

On November 16, 1987, defendant, McAfee, then serving as Chief of the Surgical Service, issued a memorandum to all staff surgeons providing, *inter alia*, that, because of an excessive workload for the department of medicine, members of the surgical staff would be assigned responsibility for the care of medical patients in addition to those surgical patients for which the surgical staff was traditionally responsible. Plaintiff objected orally and in writing to defendant, McAfee, ostensibly on the basis that the treatment of medical patients by the surgical staff would violate medical ethics and cause the quality of care accorded such patients to deteriorate.

On November 19, 1987, the acting chief of staff confirmed in writing the directives of the previous memorandum, and defendant, McAfee, supplemented this confirmation with a written opinion of the district counsel for the Veterans Administration to the effect that the plaintiff's reasons for failure to comply with the directive were not valid.

On November 23, 1987, at plaintiff's request, plaintiff's counsel drafted a legal opinion as to the plaintiff's potential liability for malpractice which, although stating that the plaintiff was "exempted" from malpractice liability under the Federal Tort Claims Act, clearly indicated that the Veterans Administration policy to which plaintiff had objected violated the standard of care owed by the government to its disabled veterans. Copies of counsel's letter were sent to a congressman, two senators, and district counsel for the Veterans Administration.

Plaintiff was subsequently reprimanded by defendant, Kadrovach, for refusing to follow the instructions of defendant, McAfee. One day prior to the delivery of the reprimand, plaintiff, while making his rounds, wrote on a patient's chart that the plaintiff "does not accept responsibility for care of medical patients."

On December 15, 1987, plaintiff was notified that a Physician's Professional Standards Board would be convened to conduct a summary review of his probational appointment. The review was provided on December 30, 1987, resulting in the plaintiff's notification of his termination effective January 15, 1988.

In his amended complaint, plaintiff attempts to set forth five separate claims for relief. In Count I, entitled "Constitutional Tort—Infringement of Free Speech by Individual Named Defendants", plaintiff essentially alleges that his protestations and conduct in refusing to assume responsibility for medical patients constitute protected expressions on matters of legitimate public concern and that the actions of defendants, McAfee and Kadrovach, in reprimanding and dismissing him violated his First Amendment rights. In Count I plaintiff requests back pay, front pay, compensatory damages, and punitive damages from the separate defendants.

Count II is entitled "Constitutional Tort—Deprivation of Property Without Due Process by the Individual Defendants". In Count II, plaintiff alleges that his "profession as a surgeon constitutes a valuable property right" and that the separation of the plaintiff through the actions of the individual defendants constitutes a deprivation of the plaintiff's property rights without due process for which the plaintiff alleges he is entitled to compensation.

Count III, termed "Constitutional Tort—Infringement of Free Speech by the United States of America," is, in essence a restatement of Count I, substituting the United States as the offending party with an additional request for reinstatement.

Similarly, Count IV duplicates Count II replacing the averments against the individual defendants with averments against the United States for which plaintiff suggests that he is entitled to reinstatement, a "clearing" of his employment record, and compensatory relief.

Count V purportedly arises under the Administrative Procedure Act. Plaintiff submits that his termination was "unlawful, arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, contrary to constitutional right, short of statutory right and without observance of procedure required by law." Plaintiff asserts that this entitles him to reinstate-

ment, expungement of derogatory references in his record, and reimbursement of "current and past pay and benefits."

Defendants timely filed a motion to dismiss or alternatively for summary judgment arguing that (1) the Veterans Administration is not a suable entity *eo nomine;* (2) plaintiff's constitutional claims against the individual defendants (Counts I and II) are precluded because Congress has enacted an alternative remedy and "special factors" counsel against allowing such constitutional claims; (3) the individual defendants are immune from suit; (4) plaintiff cannot substantiate his First Amendment claim; (5) neither a liberty nor property interest are implicated by plaintiff's dismissal, and (6) procedural due process was observed in plaintiff's termination. With regard to the constitutional claims against the United States of America, defendants assert that "because plaintiff's claims are essentially for monetary damages over $10,000, exclusive jurisdiction is in the Court of Claims ...".

## II. DISCUSSION

### (a) The Tucker Act

Neither party mentioned the obvious jurisdictional issue pertaining to the exclusive or concurrent jurisdiction of the Court of Claims until the court raised the issue *sua sponte.* By letter dated July 21, 1988, the court requested counsel to brief the following three issues: (1) Does the court have jurisdiction of all or any portion of this case, or does the Tucker Act, 28 U.S.C. § 1491 place exclusive jurisdiction in the Court of Claims? (2) if the court decides that it does not have jurisdiction of the back pay claims or other claims for damages, but does have jurisdiction to decide the equitable claims, does the court have discretion to transfer the entire matter to the Court of Claims? (3) if the court has jurisdiction to try part of the lawsuit, but not all of it, and has discretion to transfer the entire matter to the Court of Claims under those circumstances, should it?

The requested briefs have been received and reviewed by the court. From the briefs, it is apparent that the parties agree on the following propositions: (1) the Court of Claims has no jurisdiction over the claims against the individual defendants; (2) this court has jurisdiction to grant the declaratory and injunctive relief sought against the United States if that is the "primary" relief sought; and (3) this court does not have jurisdiction to award monetary damages against the United States.

The Tucker Act, 28 U.S.C. § 1491, provides the basic jurisdiction of the Court of Claims. That statute provides, *inter alia,* as follows:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

\* \* \* \* \* \*

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

\* \* \* \* \* \*

However, the Claims Court also has jurisdiction concurrent with that of the district courts in other civil actions or claims against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1346.

As noted, because the Court of Claims generally may only assume jurisdiction of claims against the United States, no issue arises under the Tucker Act as to plaintiff's claims against the individual defendants. This court's jurisdiction of such claims must stand or fall on other grounds and will be discussed *infra.*

In *Giordano v. Roudebush,* 617 F.2d 511 (8th Cir.1980), the court was presented with a similar fact-situation. In that case Giordano was discharged as assistant chief of urology from the Veterans Administration hospital where he had been serving as a probationary employee. The proffered reason for Giordano's termination was his failure to perform satisfactorily. Giordano challenged his dismissal in federal district court. The district court ultimately held that it did not have jurisdiction to award back pay in excess of $10,000 and ordered the entire damage claim transferred to the Court of Claims. The district court found, however, that Giordano's initial discharge was arbitrary and capricious and ordered Giordano's reinstatement.

On appeal, the Court of Appeals for Eighth Circuit held that, where the plaintiff's claims are primarily nonmonetary, the district court may assume jurisdiction of the nonmonetary claims. In *Giordano,* defendants argued that *Polos v. United States,* 556 F.2d 903 (8th Cir.1977) dictated that the entire cause be decided by the Court of Claims. However, the court found *Polos* to be distinguishable because it was evident that in *Polos,* the plaintiff's principal claims were for back pay and participation in the Civil Service Retirement Program:

> *'Polos' claim, then, is essentially one against the United States for the payment of damages.* Such a claim, when in excess of $10,000, is within the exclusive jurisdiction of the Court of Claims. *Polos* at 905 (emphasis added) (footnote omitted).

In contrast to Polos, Dr. Giordano has stated from the outset of this case that his claims are primarily nonmonetary. *Giordano* at 515.

Thus, counsel are correct in their statements that, to the extent that plaintiff seeks monetary relief in excess of $10,000 on claims "not sounding in tort,", this court lacks jurisdiction of the same. The question remains, however, whether this court may assert jurisdiction of plaintiff's nonmonetary claims.

It appears, from *Polos* and *Giordano* that if plaintiff's claims may properly be characterized as "primarily nonmonetary," this court may exercise jurisdiction to decide the nonmonetary claims. In *Giordano,* the Eighth Circuit held that the plaintiff's claims in *Polos* were essentially for the payment of damages while the plaintiff's claims in *Giordano* were characterized as "primarily nonmonetary."

In *Polos,* the court stated:

> It is evident that Polos' principal claims are for back pay (an amount found to be $79,939.36) and for participation in the Civil Service Retirement program. While Polos contends he was entitled to reinstatement, he concedes that he could not retain the civilian technician position, because he is no longer a member of the Arkansas Air National Guard. See 32 U.S.C. § 709(b). He does not seriously dispute that, even if reinstated, he could be discharged on thirty days' notice. 32 U.S.C. § 709(e)(6).

*Polos* at 905.

In *Giordano,* however, the plaintiff stated from the outset that his claims were primarily nonmonetary. Giordano sought reinstatement and a "clearing" of his name. The court in *Giordano* found that when Giordano's suit was first filed his back pay claim was worth only $6,000 and that monetary relief was "clearly not his principal motive." *Giordano* at 515.

In the instant case, plaintiff seeks both monetary and nonmonetary relief. In Count III, plaintiff alleges that the actions of the United States caused "damages to Dr. Maxey in the amount of compensation he has lost pending date of trial, public embarrassment and any compensation he can prove lost as the result of future lack of employment." Plaintiff's amended complaint, p. 20. Plaintiff further alleges that "Dr. Maxey is entitled to reinstatement to

his position, ... expungement of the records ... and any compensation due him pending reinstatement, as well as punitive damages ... in the amount of one million dollars...."

In Count IV plaintiff stated that he is "entitled to be reinstated ..., his record cleared ... and to be reimbursed all compensation which he has lost as a result of (his) separation." Plaintiff's amended complaint, p. 21.

In Count V, based upon the APA, plaintiff asserts that Dr. Maxey is entitled to "reinstatement as a staff surgeon ..., deletion of all derogatory references in his record ... and reimbursement to him of all current and past pay and benefits." Plaintiff's amended complaint, p. 22.

In light of governing case law, plaintiff's counsel quite naturally argues that the plaintiff's primary concern vis a vis the government is that he be reinstated to his position. To the extent that counsel for the plaintiff bases his argument upon plaintiff's subjective "concern", such an argument is immaterial.

■ In *Minnesota ex rel. Noot v. Heckler,* 718 F.2d 852 (8th Cir.1983), the Eighth Circuit, in addition to noting a decided split of authority on the Tucker Act issue, stated clearly that "(c)laims essentially seeking monetary relief over $10,000 fall within the Claims Court's exclusive jurisdiction which may not be evaded by framing a claim for injunctive relief or by requesting the exercise of mandamus jurisdiction." *Minnesota ex rel. Noot* at 859, n. 12. The court indicated that, when the injury can be redressed fully by an award of damages, the claim is properly characterized as monetary. Similarly, where declaratory relief would simply establish plaintiff's legal entitlement to the principal remedy, it is the primary focus of the principal remedy sought which controls. *Minnesota ex rel. Noot* at 859, n. 13. This means simply that if the declaratory or injunctive relief sought has "significant" prospective effect or considerable value apart from merely determining monetary liability, the equitable relief sought is paramount and the district court may assume jurisdiction over

the nonmonetary claims. *See Minnesota ex rel. Noot,* at 858, n. 11.

It would have been helpful for this court to have been made aware of the amount of back pay involved in plaintiff's claim, as well as his current employment status. There are factors considered by courts in determining the "significance" of the prospective effect or value of the declaratory or injunctive relief sought. See *Giordano* at 515; *Polos* at 905; *Minnesota ex rel. Noot* at 858–60; *Keller v. Merit Systems Protection Board,* 679 F.2d 220 (11th Cir. 1982) at 223.

■ Without belaboring the point further, it appears to the court that the equitable relief sought by the plaintiff in this case has "significant" prospective effect or "considerable" value apart from any monetary liability of the government. As such, the equitable relief sought may fairly be considered "paramount" under the law in this circuit and this court may, therefore, assume jurisdiction of plaintiff's nonmonetary claims. *Giordano, supra; Megapulse, Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir. 1982); *Rowe v. United States,* 633 F.2d 799 (9th Cir.1980) *cert. denied* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981).

### (b) The Bivens Claims

■ The next issue requiring the court's attention is whether the court may imply a *Bivens*-type action against the United States or its officers based upon the alleged violation of plaintiff's First and Fifth Amendment rights. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The primary obstacle to such actions against the federal government or its employees is *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and its progeny. In *Bush,* the Supreme Court held that a *Bivens* action is not to be implied if Congress has developed a comprehensive remedial system for the redress of a plaintiff's grievances or if "special factors" exist which counsel against such an implication.

Bush was discussed in *Premachandra v. United States,* 739 F.2d 392 (8th Cir.1984). In that case the Eighth Circuit concluded that Congress intended the civil service laws to provide the sole remedy for a wrongfully discharged Veterans Administration nonprobationary physician. However, as a nonprobationary employee, Premachandra was held to be entitled to challenge the termination decision in intraagency proceedings, appeal to the Merit Systems Protection Board, and seek review in the Federal Circuit Court of Appeals. *See* 5 U.S.C. §§ 7513, 7703.

More on point is *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir.1986). In that case, Franks, a discharged probationary associate chief of staff for research at a Veterans Administration hospital, sought damages for the alleged deprivation of his First and Fifth Amendment rights. The Tenth Circuit concluded that the *Bivens* action was barred by the rationale applied in *Bush.* The plaintiff had argued that, because he was not a civil service employee and lacked the comprehensive administrative review rights of such employees, *Bush* was inapplicable. The Tenth Circuit noted that the same argument was presented by a VA physician and rejected in *Heaney v. United States Veterans Administration,* 756 F.2d 1215 (5th Cir.1985). In *Franks* the court stated:

> A probationary VA physician who is separated from service under (38 U.S.C.) section 4106 may obtain judicial review of the administrative decision (citing *Giordano* and *Heaney* ). Such an administrative decision is a final agency action which may be appealed to a federal court pursuant to the Administrative Procedure Act. Under the Act, the administrative decision may be set aside if it is arbitrary or capricious, 5 U.S.C. § 706(2)(A) (1982), or unconstitutional, *Id.* § 706(2)(B); *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 369 n. 19 (9th Cir.1976). A physician who has been wrongfully discharged may obtain judicial relief in the form of reinstatement and back pay.... In addition, the court has power to grant interim equitable relief.... As in *Bush,* a plaintiff

such as Dr. Franks has a forum in which to present constitutional claims, may receive judicial review of the administrative proceedings, and may obtain meaningful relief in the form of reinstatement and back pay.

*Franks* at 1239–40.

Although the VA physician in *Heaney* was not a probationary employee, the discharged VA physician in *Franks* was. Further in *Heaney* the Fifth Circuit reasoned:

> Heaney asserts that *Bush* is inapposite to the present case because *Bush* held that a damages claim is precluded only where the alternative remedy available is meaningful; Heaney asserts the limited relief available under the DMS—in his case limited to reinstatement—is not meaningful redress for the violation of his first and fifth amendment rights. However, the remedy here certainly cannot be considered as meaningless as Heaney maintains; the above-quoted passage from *Davis* suggests that a scheme which provides for reinstatement offers an adequate measure of relief. This is entirely consistent with the often restricted availability of damages as opposed to equitable relief against governmental bodies under federal law. *See Bush* 103 S.Ct. at 2409 n. 12 (collecting cites). In the present case, DMS regulations provide for reinstatement and other relief where an adverse personnel decision is found to be unconstitutional. Thus, the DMS system provides a measure of relief. This is enough to preclude a damages remedy.

Thus, the fact that relief was limited to reinstatement was found by the court to be insufficient to evade the application of *Bush,* barring the *Bivens* claim. That reinstatement is a sufficiently "meaningful" remedy is buttressed somewhat by cases of the Supreme Court which have allowed reinstatement as a remedy for constitutional violations but disallowed, in those cases, damages to the injured employee on the basis of qualified immunity. See *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The issue in *Davis* was

different from the one presented here, i.e. whether a *Bivens* claim should be implied at all, however, as the *Heaney* court noted, such cases suggest that a scheme affording reinstatement offers an adequate measure of relief.

This court would be more reluctant to adopt the *Franks* rationale had the Supreme Court not recently expanded the "special factor" exception. In *Schweiker v. Chilicky,* ── U.S. ──, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), plaintiffs brought *Bivens* claims against the Secretary of Health and Human Services, contending that they were denied due process as a result of the defendant's denial of Social Security benefits. The Supreme Court held that the continuing review statutes were a "special factor" precluding a *Bivens* action notwithstanding that only past-due benefits could be awarded under the statutes and compensatory damages were unavailable. Although this, in itself, is not particularly instructive, the court stated that the special factor exception properly induces "an appropriate judicial deference to indications that congressional inaction has not been inadvertent." The court added that:

> When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the court of its administration, we have not created additional *Bivens* remedies.

*Chilicky* at ──, 108 S.Ct. at 2468.

Plaintiff argues that, although non-probationary physicians of the VA enjoy sufficient protection of their First and Fifth Amendment rights via the various levels of appeal and due process, this is simply not the case with respect to a probationary employee.

The Eighth Circuit recently addressed the *Bivens*-preclusive effect of *Bush.* In *McIntosh v. Weinberger,* 810 F.2d 1411 (8th Cir.1987), the court stated:

> The administrative remedy that was available to contest the demotion in *Bush,* an appeal to the Merit Systems Protection Board under 5 U.S.C. §§ 7512 and 7513, is not available here, because

Turner's actions are not covered by this procedure....

*     *     *     *     *     *

> ... Turner also suggest that he may have engaged in a prohibited personnel practice actionable by the Special Counsel of MSPB under 5 U.S.C. § 1206. However, even if we assume this to be true ... the MSPB is authorized to take disciplinary action against Turner, but not to award any affirmative relief to the injured employee. 5 U.S.C. § 1207(b). This is not adequate to bar a *Bivens* action.... We conclude with the District Court that the 'plaintiffs are without redress as to defendant Turner's actions in the absence of a constitutional remedy' ... and therefore that their *Bivens* action is not barred by *Bush.*

*McIntosh* at 1435–36.

Thus, in *McIntosh,* plaintiffs were in a "damages or nothing" situation wherein a majority of courts have implied a *Bivens* action.

Further, although the limited protection afforded a probationary physician in the employ of the Veterans Administration may or may not, in this court's opinion, constitute a comprehensive plan by Congress substituted for the constitutional rights that a federal employee normally has, the Eighth Circuit has unambiguously declared that:

> The limited board review of a probationary physician's professional competency is the only procedure available to him. As discussed, in contrast to the plenary hearing in the case of a tenured employee required under (38 U.S.C.) § 4110, a probationary physician is entitled to only a summary procedure. He is not entitled under the statutory scheme to any review of the Board's disciplinary action. Thus, our analysis, contrary to defendant's, is that *Congress intended the tenured employee to be given greater rights than a probationary employee.*

*Giordano* at 517 (emphasis supplied).

Of cases holding that a *Bivens* action should be available to probationary federal employees challenging adverse personnel

decisions, *Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986) is typical. *Kotarski,* however, was vacated by the Supreme Court on June 27, 1988, for reconsideration in light of *Chilicky. See Cooper v. Kotarski,* —— U.S. ——, 108 S.Ct. 2861, 101 L.Ed. 2d 897 (1988). Thus, the Supreme Court has indicated that the *Bivens* claims asserted by the plaintiff in this case may be governed by *Chilicky,* and if indeed it is, then *Bush* precludes such an action. The court notes that the dissent in *Kotarski* forcefully argued without reference to *Chilicky* that *Bivens* actions are unavailable to probationary federal employees insofar as adverse personnel decisions form the basis of the constitutional claims asserted. *See Kotarski* at 1351 (Hall, J., dissenting). This court concludes, as the Supreme Court has suggested, that *Chilicky,* supplements and reinforces the reasoning of the *Kotarski* dissent and that analysis is adopted herein.

The court concludes that the remedies available to the plaintiff are meaningful and constitutionally adequate, even if not as extensive as those available to a nonprobationary employee. *Giordano* indicates clearly that "congressional inaction has not been inadvertent" in this area and that "Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *See Chilicky,* —— U.S. at ——, 108 S.Ct. at 2468.

The court is aware that the Court of Appeals for the Federal Circuit has held that the Claims Court does not have jurisdiction to review a probationary employee's dismissal whether based upon allegations of regulatory or statutory violations, or constitutional infringement. *United States v. Connolly,* 716 F.2d 882 (Fed.Cir. 1983) ("Connolly II"). Plaintiff agrees, in the instant case, that the district court does not have jurisdiction to award money damages or back pay against the United States, and that if the court has any power at all in this matter, it has only "jurisdiction to grant the declaratory and injunctive relief sought by plaintiff against the United States." *See* plaintiff's counsel's letters to the court dated August 8, 1988, and August 3, 1988.

If *Giordano* and *Connolly II* are read together, then it is possible that no court has jurisdiction to award monetary relief with respect to plaintiff's claims. Even if this is the case, however, this does not of itself militate in favor of the availability of a *Bivens* action. In *United States v. Fausto,* —— U.S. ——, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court held that a suspended employee of the Interior Fish and Wildlife Service could not maintain an action in the Claims Court under the Back Pay Act, 5 U.S.C. § 5596, because the comprehensive and integrated review scheme of the Civil Service Reform Act, 5 U.S.C. (1982 Ed. and Supp. IV) "deliberately" excluded employees in Fausto's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue. As a result, Fausto was held to have no right to administrative review, nor to judicial review in any court relying on Tucker Act jurisdiction.

Obviously, *Fausto* is a "far cry" from being directly "on point", however it does reflect that, where Congress "intentionally", even by implication, has established limited rights to administrative or judicial review of personnel decisions, it is of no consequence that no relief may be available at all. After all, that is what "probationary employee" means. It is intended that such employees not have the full complement of "rights" afforded "non probationary employees". The court feels constrained, in light of the foregoing, to conclude that a *Bivens* action is not available to a claimant under the circumstances present in this case.

Counts I through IV of plaintiff's amended complaint all "sound" in "constitutional tort" of the type established by *Bivens* and disallowed in *Bush.* As noted, plaintiff, himself, has denominated these counts as "constitutional torts". Accordingly, defendant's motion to dismiss or for summary judgment will be granted as to these counts.

**434**

This disposition has rendered "moot" the other issues raised.

The parties are directed to brief, within 14 days from the date of this opinion, the issues of the scope of judicial review available to the plaintiff under the allegations of Count V of the amended complaint and the remedies theoretically available thereunder.