**E. Stanton MAXEY, M.D., Appellant,**

v.

**Dan G. KADROVACH, David K. McAfee, M.D., and the Veterans Administration, an agency of the United States of America, Appellees.**

No. 89–1973.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1989.

Decided Nov. 20, 1989.

Rehearing Denied Jan. 12, 1990.

William Jackson Butt, II, Fayetteville, Ark., for appellant.

Deborah J. Groom, Fort Smith, Ark., for appellees.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

PER CURIAM.

E. Stanton Maxey, M.D., appeals from the district court's [1] dismissal of his constitutional tort claims and ruling in favor of defendants on his claim under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, arising from his discharge as a Veterans Administration (VA) physician. We affirm.

On October 26, 1986, Maxey was appointed as a staff surgeon at the VA Medical Center in Big Springs, Texas. He later transferred to a similar position at the VA facility in Fayetteville, Arkansas, where he

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

was granted clinical privileges in general surgery.

On November 16, 1987, appellee David K. McAfee, chief of surgical services at the Fayetteville facility, issued a directive to all staff surgeons stating that, because of an excessive workload for the medical services department, physicians on the surgical staff would be temporarily assigned primary responsibility for the care of certain medical services patients. Maxey objected, arguing that the assignment would violate medical ethics and VA bylaws.

Maxey was subsequently advised in writing that his reasons for failing to comply were not valid. Maxey's counsel then drafted a legal opinion for Maxey which concluded that, although Maxey would face no malpractice liability by complying with McAfee's directive, the directive appeared to violate ethical standards. Copies of the opinion were sent to the VA district counsel as well as Maxey's congressman and senators. After being warned in writing by McAfee regarding his refusal to accept medical services patients, Maxey was reprimanded for insubordination by appellee Dan G. Kadrovach, medical center administrator, when Maxey continued to refuse to accept medical services patients. Maxey then requested a conference with Kadrovach.

On December 15, 1987, Maxey was notified that a Physicians Professional Standards Board (Board) would be convened on December 30, 1987, to conduct a summary review of his probational appointment and make a recommendation to Kadrovach. Maxey declined to cancel a vacation to attend, but did obtain permission for a representative to appear on his behalf. On December 29, 1987, at 5:27 p.m., Maxey was notified that because of his probationary status, the determination of the Board would be final without review by Kadrovach. The Board met the following day, considered the evidence presented and determined that Maxey be terminated from his probationary status. Maxey's date of separation from the VA was January 15, 1988.

Maxey filed the instant suit against Kadrovach, McAfee, the VA and the United States, claiming that appellees violated his constitutional rights to free speech and due process (Counts I–IV) and terminated him from employment in an unlawful and arbitrary fashion (Count V). Maxey sought reinstatement, backpay, compensatory and punitive damages, restoration of benefits and expungement of derogatory references in his personnel record.

Appellees' motion to dismiss Maxey's constitutional tort claims was granted by the district court, relying upon *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and its progeny. *Maxey v. Kadrovach*, 696 F.Supp. 425, 430–33 (W.D.Ark.1988). Thereafter, the district court entered judgment on behalf of appellees on Maxey's remaining claim under the APA.

Maxey argues on appeal that (1) the termination procedure was unlawful because of the illegality of the November 16 memorandum, improper notice, and the presence on the Board of a prejudiced member; (2) the district court erred in not allowing further discovery to supplement the record; (3) he was entitled to the statutory termination procedures due a nonprobationary rather than a probationary physician; and (4) the district court erred in dismissing his constitutional tort claims.

■ If Congress has not explicitly created a direct action for constitutional violations by federal officials or employees, and if it has created other remedies to vindicate (though less completely) the particular rights asserted, a federal court will not recognize a constitutional tort claim unless Congress' omission was inadvertent. *McIntosh v. Turner*, 861 F.2d 524, 526 (8th Cir.1988) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988)). A VA probationary physician who is discharged in alleged violation of the Constitution may appeal that agency decision to a federal court under the APA to gain redress, albeit limited in nature. *Franks v. Nimmo*, 796 F.2d 1230, 1239–40 (10th Cir.1986). Maxey thus has no right to pursue constitutional tort claims against

his supervisors.[2] *See id.; McIntosh*, 861 F.2d at 526. Accordingly, the district court correctly dismissed Maxey's *Bivens*[3] claims.

■ In reviewing a district court's entry of judgment on an APA claim, an appellate court " 'must render an independent decision on the basis of the same administrative record as that before the district court.' " *Brown v. United States Dep't of Interior*, 679 F.2d 747, 748–49 (8th Cir. 1982) (quoting *First Nat'l Bank v. Smith*, 508 F.2d 1371, 1374 (8th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975)). A reviewing court must set aside any agency action found to be arbitrary, capricious, an abuse of discretion, short of statutory right or without observance of procedure required by law. 5 U.S.C. § 706.

■ We reject Maxey's contention that he was not a probationary employee and thus was entitled to statutory termination procedures due a nonprobationary physician, despite the ambiguity of the personnel forms.[4] Title 38 U.S.C. § 4106(b) "unequivocally requires" that physicians appointed under § 4104 serve a two-year probationary period. *Franks*, 796 F.2d at 1235. Title 38 contains no authority for the VA to waive the probationary period; thus it had no discretion regarding whether to waive a "trial period." Maxey's treatment by the VA as a probationary physician was correct.

■ Maxey argues that his termination by the VA was unlawful because the memorandum directing surgeons to provide primary care to medical services patients violated VA bylaws. We disagree. Article III, section 6 of the bylaws states that in an emergency where a qualified professional staff member is not available, a specialist may be called upon for assistance and temporary staff privileges granted. If Maxey believed that he did not have the expertise to treat a particular medical services patient, he could have requested consultative assistance. Moreover, he had treated medical services patients when assigned Officer of the Day duty.

■ Maxey also argues that his termination was unlawful because he received inadequate notice. Specifically, he contends that the amended notice he received at 5:27 p.m. on December 29, 1987, informing him that the Board's decision was to be final instead of recommendatory, was not adequate because the hearing was scheduled for the following morning.

The VA's regulations require that probationary physicians be provided written notice of the Board's purpose in meeting. Department of Medicine and Surgery Supplement, MP–5, pt. II, ch. 4, § 4.06(b). Here, despite the short notice given of the change in the Board's function, Maxey's ability to prepare for the hearing was not impaired. He had two weeks notice of the subject matter of the hearing, was waiting for an appointment with Kadrovach to discuss the same issues, had already retained legal counsel and had obtained a representative to appear on his behalf before the Board. Therefore, the notice to Maxey of the Board's revised purpose was not inadequate.

■ Maxey next argues that Board member Dr. John G. Bergstrom was not an impartial decisionmaker because he was appointed by McAfee and was also involved in the decision to have surgical services assist in alleviating the medical services work-

---

2. Contrary to Maxey's argument, the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101–11152, is inapposite to his claims because it applies to the discharge of incompetent, not insubordinate, physicians. Even if the Act applied to the latter, it cannot be read to create a direct action for constitutional violations by members of a VA peer review board.

3. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

4. The appendix supplied to the court indicates that Maxey was initially hired by the VA Medical Center in Big Springs, Texas, as a staff surgeon in a "full time permanent, excepted" position, pursuant to 38 U.S.C. § 4104(1). The appointment is noted to be subject to a two-year probationary period commencing " *00–00–00." A personnel notice to employees states that "[a] trial period may be required at the discretion of the employing office."

load. Maxey claims that Bergstrom's participation violated VA procedure.

"Persons in a position to prejudice the action of the board may not serve as members of the board conducting the review." *Id.* § 4.06(c)(9). However, allegations of misconduct, bias or prejudice by Board members must be specific, not general, in order to establish the denial of a neutral and detached tribunal. *Gilbert v. Johnson,* 419 F.Supp. 859, 871 (N.D.Ga.1976), *aff'd in relevant part,* 601 F.2d 761 (5th Cir. 1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). The fact that McAfee appointed Board members is insufficient to establish bias. *See id.* Moreover, the fact that Bergstrom participated in the preparation of the November 16 memorandum did not disqualify him because there was no showing that Bergstrom had any "personal animus or ill will" towards Maxey. *Klinge v. Lutheran Charities Ass'n,* 523 F.2d 56, 63 (8th Cir. 1975).

Maxey's final argument is that the district court erred in refusing to allow discovery and supplementation of the administrative record. A federal court is confined to the administrative record in deciding an appeal under the APA, *Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 357 (8th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985), unless the plaintiff can make a "strong showing of bad faith or improper behavior." *Corning Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.,* 736 F.2d 479, 481 (8th Cir.1984).

Maxey contends that he made a sufficient showing to overcome the general rule disallowing discovery by citing (1) the short notice provided him of the Board's decisionmaking, not recommendatory, function; (2) the uncertainty as to whether one member of the Board had any knowledge of the VA bylaws; (3) the placement of Bergstrom on the Board as chairman by McAfee; and (4) McAfee's false testimony that the reprimand preceded Maxey's failure to treat a patient. We find that the evidence regarding these allegations of misconduct falls short of the strong showing of bad faith or improper behavior necessary to permit discovery and supplementation of the administrative record. With respect to Maxey's final allegation, the record does reflect that the reprimand was received by Maxey after, not before, he refused to treat a patient on December 12, 1987. However, even without this erroneous testimony, there is sufficient evidence on the record to find that the Board's action was rational and thus was neither arbitrary nor capricious. *See id.* at 480–81.

Accordingly, we affirm.