**Daniel VON EYE, Plaintiff,**

v.

**UNITED STATES of America, and United States Secretary of Agriculture, Michael Espy, Defendants.**

**No. Crim. 94–4020.**

United States District Court,
D. South Dakota,
Southern Division.

May 25, 1995.

Bret Chancelor Merkle, Samp Law Office, Sioux Falls, SD, for plaintiff.

Craig Peyton Gaumer, U.S. Attys. Office, Sioux Falls, SD, for defendants.

MEMORANDUM OPINION and ORDER

PIERSOL, District Judge.

This matter came on for oral arguments and to clarify the administrative record on Monday, May 15, 1995, with Plaintiff appearing personally and by Bret Chancelor Merkle, and with Defendants appearing by Craig Peyton Gaumer. After consideration of the testimony, the arguments of counsel and the administrative record, the ASCS determination that work done by Plaintiff prior to November 14, 1991, is included in his commenced conversion exemption and that work undertaken after that date is not included is affirmed.

## FACTS

Plaintiff owns Section 6 of Farm 276 and leases Section 7.[1] Testimony at the hearing described three wetland areas[2] and four drainage ditches. Wetland #2 is towards the east in Section 6. Water from Wetland #2 drains into Channel C which runs west and then south around a hill; runs into Channel B which turns back towards the east; drains south through the "east culvert" and eventually reaches the slough in section 7. Channels C and B are both north of the township road. The second area consists of two wetlands towards the west in Section 6. Wetland #1 drains through Channel A into Wetland #3 located to the south and west, and on both the north and south sides of the township road. Channel D begins on the north side of the road, runs through the "west culvert," and continues south of the road through Wetland #3 and drains into the slough in Section 7.

In 1984, Plaintiff began work to drain approximately 20 acres of wetland on his farm 276. Testimony by Plaintiff was that in September of 1988, in order to meet the statutory time limitation to qualify for a Swampbuster exemption,[3] he wrote out two paragraphs, long-hand, entitled "Drainage Plan for Farm 276" and submitted the plan to the Moody County ASCS Committee,[4] requesting a commenced conversion determination. The plan reads, in its entirety:

The drainage project was started in the summer of 1984 on the SW 1/4 of Sec. 6, 107–49 and the NW 1/4 of Sec. 7, 107–49. Rental of a backhoe and a dirt scraper would be needed. These pieces of equipment would be rented from the Van De Berg Brothers.

The areas to be drained are marked on an ASCS map. Channel A drains to Channel D. Channel C drains to Channel B. The channels were to be cut so all the farm ground would be drained.

Administrative Record [AR] at 120–21. On June 20, 1989, after a prior denial and upon reconsideration of the prior determination and examination of aerial photographs, ASCS granted Plaintiff a commenced determination exemption.[5] AR at 095, 088.

In 1990, Plaintiff determined that the wetlands were not draining as he had outlined in his plan because the culverts under the township road were not low enough to drain from north to south. Testimony by Plaintiff and by a member of the Township Board on

1. Sections 6 & 7 are separated by a township road running east and west. There are culverts running under the road; one towards the east and one towards the west.

2. All numerical references to the wetlands are taken from Hearing Exhibit #1. The numbers do not correspond to the SCS designations.

3. The regulations implementing the Swampbuster provisions are currently found at 7 C.F.R. Part 12 (1995). Section 12.5(b)(5) sets out the commenced conversion exemption. These provisions are identical to those which went into effect on December 23, 1985.

4. There is some debate in the Administrative Record regarding whether and when the drainage plan was presented to the Moody County

ASCS Committee. Plaintiff testified that he submitted the plan in 1988 when he first made application for the commenced determination. The plan itself is undated. The map contained in the Moody County ASCS Office file is stamped 7–26–91. AR at 036, 51. The events in this case occurred at the time that implementation procedures were just being established and the documentation is, as the State ASCS Office notes, lacking. AR at 51.

5. The early procedural history of this case is well summarized in the S.D. State ASCS Office's "Commenced Conversion Summary" located at AR at 032–35.

November of 1990, showed that the west culvert was in need of repair and Plaintiff reported that fact to the Township Board on November 20 or 21, 1990. The culvert had been torn out by the time the Township Board arrived to inspect it, but the Board, nevertheless, agreed to pay for the replacement of the west culvert. The west culvert was replaced with a culvert larger in diameter resulting in a lowering of the elevation 6″ and a greater drainage capacity. AR at 012. Plaintiff testified that the west culvert needs to be lowered an additional 2½ feet in order to drain Wetlands #2 and #3 and complete his original conversion plan.

Plaintiff also testified that, at the time the west culvert was replaced, he personally authorized the construction company performing work to lower the east culvert two (2) feet. The Township Board did not inspect the area until after the work was finished. The Board refused to approve the completed project and Plaintiff paid for lowering the east culvert. AR at 008–16. Plaintiff had no authorization from the Township Board to lower either culvert. The Township Board responded promptly to Plaintiff's notification regarding the east and west culverts. Approval of the Township Board was necessary to lower the elevation of either the east or west culverts. The Township Board did not authorize lowering either culvert.

On April 11, 1991, Plaintiff was notified by SCS that lowering the culverts was not included in his prior commenced determination and that he might be in violation of the FSA. AR at 075–76. After a hearing on the matter, the ASCS County Executive Director notified Plaintiff on August 11, 1992, that:

> the lowering of the culvert will be considered as part of the commenced conversion determination and that no other work or action on culverts, channels, ditching, draining will be allowed or included as part

of the commenced determination after the 11–14–91 date.

AR at 41. This determination was appealed through all channels available to Plaintiff,[6] and is the subject of the present action.

## SCOPE OF REVIEW

Plaintiff's prayer for relief requests a number of things, including a trial *de novo* pursuant to 5 U.S.C. § 706(2)(F), a reversal of the ASCS determination, and an affirmative order permitting Plaintiff to complete his conversion project. This case is, in fact, an administrative appeal of the commenced determination and this Court's jurisdiction is limited to review of agency actions when authorized by statute or when there has been a final agency action. 5 U.S.C. § 704 (1977). Plaintiff has exhausted the administrative appeals provided by 7 C.F.R. § 780 and this is a final agency action.

An agency's actions will be set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Arbitrary and capricious review examines: (1) whether the agency considered what it was supposed to consider; (2) whether the agency considered something it was not supposed to consider; and (3) whether there is a rational relationship between the evidence and the decision. *See* Childress & Davis, *Federal Standards of Review*, § 15.07 at 15–41 (2d ed. 1992) (citing *Motor Vehicles Manufacturers Ass'n v. State Farm Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)).

The Court reviews only the administrative record. 5 U.S.C. § 706 (1977); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 815, 28 L.Ed.2d 136 (1971) ("That review [by the District Court] is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision."); *Maxey v.*

---

**6.** Plaintiff appealed the SCS determination of April 11, 1991, that he had converted wetlands to the South Dakota State ASCS Committee which upheld the determination. Plaintiff was notified of that decision by letter dated November 14, 1991. AR at 065. Plaintiff then appealed to the Deputy Administrator, State and County Operations which granted partial relief:

> Relief may be granted for conversion activities that were completed on the subject wetlands prior to November 14, 1991. Drainage activities after than date will be a violation of the wetland conservation provisions.

AR at 027. Plaintiff then appealed to the National Appeals Division which denied the appeal. AR at 001.

*Kadrovach,* 890 F.2d 73, 77 (8th Cir.1989), *reh'g denied, cert. denied,* 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990) ("A federal court is confined to the administrative record in deciding an appeal under the APA, unless the plaintiff can make a 'strong showing of bad faith or improper behavior.' ").

▪ Agency determinations are afforded substantial deference. "The court is not empowered to substitute its judgment for that of the agency." *Bowman Trans., Inc. v. Arkansas–Best Freight System,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), *reh'g denied* 420 U.S. 956, 95 S.Ct. 1340, 1341, 43 L.Ed.2d 433 (1975). This deference especially extends to an agency's unique experience and knowledge in its own area of expertise: "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 1860, 104 L.Ed.2d 377 (1989). In other words, if an agency has properly considered the evidence placed before it and has a rational basis for its determination, the Court will not overturn that determination even if the Court would have reached a contrary determination.

### WETLANDS DETERMINATION

The Swampbuster provisions of the Food Security Act (FSA), Pub.L. 99–198, Title XII, 99 Stat. 1504; 16 U.S.C. §§ 3821 et seq., provide that anyone who grows an agricultural commodity on a converted wetland will be ineligible for a variety of agricultural payment programs. 16 U.S.C. § 3821. Swampbuster also provides several exemptions, one of which is that no one will become ineligible if the conversion of the wetland commenced prior to December 23, 1985. 16 U.S.C. § 3822(b)(1)(A). Plaintiff is claiming the commenced conversion exception.

The implementing regulation expands the statutory exemption slightly, requiring that the conversion be "commenced *or completed* before December 23, 1985." 7 C.F.R. § 12.5(b)(1)(i) (emphasis added). A completed conversion is one which "the draining, dredging, leveling, filling or other manipulation was applied to the wetland and made the production of an agricultural commodity possible without further manipulation ..." before December 23, 1985. 7 C.F.R. § 12.5(b)(2). Testimony was presented that these wetlands are not yet drained. The ditching is complete, except for some maintenance required due to silting occurring since 1993, but the area does not drain because the west culvert is too high to permit water to flow through or under the township road and into the slough in Section 7.

The conversion of a wetland is considered commenced if:

(1) work was actually started to drain, dredge, fill, level, or otherwise manipulate in a manner that reduced the flow, circulation, or reach of water in a wetland, and the work was begun before December 23, 1985; *or*

(2) substantial funds were expended or legally committed by entering into a contract for the work described in (1) or construction supplies or materials were purchased for the primary and direct purpose of such work before December 23, 1985.

7 C.F.R. § 12.5(b)(3) (1995). To receive a commenced conversion determination, and fall within the exception in § 3822(a), further requires:

(1) by September 19, 1988, a request to ASCS to make such a determination;

(2) a demonstration that the conversion has been *actively pursued;* [7]

(3) completion of the conversion on or before January 1, 1995; and

(4) a showing of undue economic hardship due to "substantial financial obligations incurred prior to December 23, 1985, for the primary and direct purpose of

---

7. The regulation defines "actively pursued" as meaning:

"efforts toward the completion of the conversion activity have continued on a regular basis

since initiation of the conversion, except for delays due to circumstances beyond the person's control."

7 C.F.R. § 12.5(b)(5)(ii).

converting the wetland" if construction has not begun or a contract or supplies been purchased.

7 C.F.R. § 12.5(b)(5) (1995).

The regulations list several things which the National Appeals Division did consider when denying the appeal of this commenced determination.[8] The agency looked at the fact that there was no evidence that Plaintiff expended funds for conversion prior to November 14, 1991, or legally committed himself by contracting for work or supplies for the conversion as required by 7 C.F.R. § 12.5(b)(3). AR at 005. Further, the agency noted that Plaintiff would suffer "no undue financial hardship" from the denial as required by 7 C.F.R. § 12.5(b)(5) because he had no outstanding commitments for qualified expenditures on November 14, 1991.

■ The agency did not discuss the requirement that conversion be actively pursued. Section 12.5(b)(5) states, "[T]he following requirements shall apply to all determinations of commencement ..." and lists, among the four, active pursuit of the conversion and a showing of undue economic hardship from financial obligations. 7 C.F.R. §§ 12.5(b)(5)(ii) & 12.5(b)(5)(iv). It is the finding of this Court that the regulations require all four elements of subsection (b)(5) be met in order to qualify for a commenced determination. Because Plaintiff failed to demonstrate financial hardship, the agency

did not need to consider whether he had actively pursued the conversion.[9]

■ Plaintiff urges the Court to consider the intent of his conversion plan.[10] The Court has thoroughly examined the Code of Federal Regulations and the Swampbuster statute itself. No where in either is the intent of the conversion a consideration. The major objective of the swampbuster provisions of the FSA was to "discourage the draining of wetlands or 'swampbusting' for the purpose of growing agricultural commodities." H.Rep. No. 99–271, 99th Cong. 1st Sess., *reprinted in* 1985 U.S.C.C.A.N. 1103, 1182. The purpose of the commenced conversion determination is expressly stated as allowing completion to prevent unnecessary economic hardship. 7 C.F.R. § 12.5(b)(5). The commenced exemption may not be applied to obviate the intent of the legislation itself.

■ Plaintiff also argues that the township road is a manmade-barrier and, therefore, does not fall within the swampbuster provisions. The statute does exempt from regulation artificial lakes, ponds, and wetlands created for livestock, irrigation, flood control and the like. 16 U.S.C. § 3822(b)(2). There is no evidence in the administrative record or from testimony that the wetlands in question were artificially created. The Court finds that the restrictions of § 3821 apply to the road in so far as it affects conversion.

---

8. · The SCS determination simply involved a finding that wetlands had been converted since November 28, 1990. AR at 068. The appeal to the State ASCS Office resulted in a determination that the commenced determination only covered work done prior to June 20, 1989. AR at 065. DASCO's more favorable opinion extended the period of time covered by the commenced determination to November 14, 1991, because the notification of June 22, 1989 did not notify Plaintiff of "the extent of the activities covered by the commenced conversion exemption." AR at 027. The Court finds that this determination was· favorable for Plaintiff in that it gave him an extra sixteen months of exemption which he had not previously had. There also remained available an administrative appeal to the National Appeals Division which Plaintiff utilized.

9. One of the requirements of 7 C.F.R. § 12.5(b)(5) is that the conversion be completed by January 1, 1995. I find that Plaintiff's com-

plaint originates from the April 29, 1991, determination by SCS that the commenced ruling covered work done before June 20, 1989, and that the process of appeal will not operate to his detriment.

10. At issue during the hearing to clarify the administrative record was whether the omission of the word "culvert" from Plaintiff's Drainage Plan affected his present ability to complete the conversion of the wetlands. I find that, while the Drainage Plan was in many respects merely an outline rather than a detailed construction plan, that plan was, nevertheless, approved by the Moody County ASCS Committee. Any dispute regarding whether the plan would have been approved had the plan delineated a need to lower the culverts is not material to the present appeal since Plaintiff did receive a commenced conversion exemption based on the plan he submitted.

Finally, the Court finds that there is a rational relationship between the evidence considered and the agency's denial of a continuing commenced determination. The swampbuster provisions may be characterized as harsh.[11] The statute is designed to preserve wetlands, not farm them. ASCS was liberal in its application of the commenced determination in that it did not penalize Plaintiff for the lowering of the east culvert which had been completed by November 14, 1991, or any other conversion work completed by that date. DASCO's finding that the June 22, 1989, commenced conversion exemption had not stated what future acts were exempt, and that Plaintiff had been justified in continuing his conversion under that determination was fair and reasonable. Furthermore, the swampbuster provisions deny benefits to those who convert wetlands, they do not prohibit wetland conversion. Plaintiff is now on notice of the consequences should he complete his drainage plan.

For all of the stated reasons, the ASCS determination that work done by Plaintiff prior to November 14, 1991, is included in his commenced conversion exemption and that work undertaken after that date is not included is affirmed, and Plaintiff's suit is dismissed with prejudice.

---

**11.** There is little case law interpreting the swampbuster provisions of the FSA. However, the legislative history indicates that Congress intended the conservation (sodbuster) and swampbuster provisions to remove some 25 million acres of erodible land from cultivation for the purpose of preserving the nation's long-term agricultural capabilities and reducing soil sedimentation and pollution of waterways. H.Rep. No. 99–271, 99th Cong. 1st Sess., reprinted in 1985, 185 U.S.C.C.A.N. at 1181–82. Courts have characterized comparable legislation such as the Clean Water Act as "broadly remedial." *United States v. Plaza Health Lab, Inc.*, 3 F.3d 643, 647 (2d Cir.1993); *Minnehaha Creek Watershed Dist. v. Hoffman*, 597 F.2d 617, 625 (8th Cir.1979) (holding CWA, 33 U.S.C. § 1251, *et seq*, should be interpreted broadly). The CWA itself states that its objective is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. I find that a broad interpretation of the swampbuster provisions is required in order to achieve its purposes.