**UNITED STATES of America,
Plaintiff,**

v.

**Jerry M. DIERCKMAN, Defendant.**

No. 96–112–C–B/G.

United States District Court,
S.D. Indiana,
New Albany Division.

Oct. 21, 1998.

Jill E. Zengler, Asst. U.S. Atty., Indianapolis, IN, for plaintiff.

David E. Dearing, Indianapolis, IN, for defendant.

### ENTRY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

Plaintiff, United States of America, brings this action to enforce the United States Department of Agriculture's (USDA) decision that Defendant, Jerry Dierckman (Dierckman), owes the United States $92,703.00 plus interest due to an overpayment of crop subsidies. The USDA declared Dierckman ineligible for crop subsidies based upon its determination that a portion of property operated by Dierckman was a wetland converted in violation of the Swampbuster provision of the Food Security Act, 16 U.S.C. §§ 3821 *et seq.* Dierckman counterclaims, requesting that we set aside the administrative actions, declare him eligible for crop subsidies, and order the government to pay him the subsidies that he has been denied. Before us now are motions for summary judgment filed by both parties. For the reasons discussed below, we *GRANT* Plaintiff's motion for summary judgment and *DENY* Defendant's motion for summary judgment.

## I. THE FOOD SECURITY ACT

On December 23, 1985, Congress passed the Food Security Act, 16 U.S.C. § 3801 *et seq.* One purpose of the Act is to discourage farmers from draining or otherwise altering wetlands to grow agricultural

commodities. To that end, Congress included in the Act a provision commonly known as "Swampbuster," which makes farmers ineligible for all USDA farm program subsidies if they carry out certain activities in wetlands.

The original Swampbuster provision states that "following December 23, 1985, any person who in any crop year produces an agricultural commodity on converted wetland" becomes ineligible for USDA benefits. 16 U.S.C. § 3821 (1986). In 1990, Congress added a more stringent Swampbuster provision, which provides that "any person who in any crop year subsequent to November 28, 1990, converts a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible" is ineligible for USDA subsidies. *Id.* at § 3821(b). The more recent provision does not require that the person actually produce crops on the converted wetland, only that they converted the wetland for that purpose.

A person seeking USDA subsidies must first ask the Soil Conservation Service (SCS), a USDA agency, to determine whether the property for which he seeks subsidies contains wetlands. An adverse determination may be appealed, with the option of a final appeal to the Chief of SCS. Based on SCS's decision, another USDA agency, the Farm Service Agency (FSA), then determines the person's eligibility for USDA subsidies.[1]

## II. *FACTUAL BACKGROUND*

Dierckman is a farmer. He grows crops on his own land and tillable land that he rents from others, including his father, Milton Dierckman (Milton). The land that he rents from his father is located in Franklin County, Indiana. (Administrative Record, Volume 1(AR1) at 020, 033.) On January 7, 1991, Dierckman requested

USDA subsidies for the 1991 crop year. (AR1 199.) Dierckman's request triggered three agency determinations, which we refer to as the wetland, conversion, and ineligibility determinations.

### A) *The Wetland Determination*

First, the USDA's Soil Conservation Service (SCS) determined that the land Dierckman was renting from his father contained wetland and converted wetland. The process that led to that final conclusion was a long one. It started on March 4, 1991 when Michael Gribben (Gribben), district conservationist in the Brookville, Indiana office of SCS, completed an evaluation of Milton's farm, including the area operated by Dierckman. Gribben's final determination was that the northernmost 15 acres of the farm consisted of wetlands and converted wetlands, and was operated by Dierckman.

Dierckman appealed that decision to the area conservationist. (AR1 at 197.) After performing field work at the farm, the area conservationist also concluded that the farm land operated by Dierckman consisted of wetlands and converted wetlands.

On July 11, 1991, the area conservationist's decision was affirmed by the state conservationist after members of the state conservationists' wetland appellate team visited the farm and performed field work. On September 27, 1991, the Chief of SCS in Washington D.C. affirmed the state conservationist's decision, making the agency's decision final.

### B) *The Conversion Determination*

On December 18, 1991, Gribben and Norman Klusman, a SCS technician, observed the farm land at issue and saw that, in the area classified as wetlands, stumps had been removed and piled, and the land had been leveled and root raked. They concluded that this work occurred after

---

1. At the time relevant to this case, the Farm Service Agency was known as the Agricultural Stabilization and Conservation Agency.. However, in this Entry, we will refer to the agency as the Farm Service Agency or FSA.

November 28, 1990 and constituted conversion of a wetland. (AR1 122–124.)

On February 3, 1992, Dierckman told Gribben that Milton had declared his intention to "improve" the property although Milton knew it was against USDA policy. Dierckman also stated that "I have no control over the ground. Dad owns it. I just rent it." (AR1 121.) On July 17, 1992, the area conservationist affirmed Gribben's determination that Dierckman converted the wetlands after November 28, 1990 (AR1 084–085), a decision which was subsequently affirmed by the state conservationist. (AR1 at 065–066.)

On October 28, 1993, the Acting Chief of SCS rejected Dierckman's appeal of the wetland determination. Thus, the determination that wetland had been converted post-November 28, 1990 became final.

### C) *The Ineligibility Determination*

The matter was then referred to the FSA to determine whether Dierckman's USDA subsidies would be effected. The Franklin County FSA committee was the first to consider Dierckman's eligibility for subsidies in light of SCS's determinations. On November 17, 1993, the committee ruled that owner, Milton, and operator, Dierckman, were both ineligible for all USDA payments on all land that they own or operate. (AR2 096–097.) On January 19, 1994, Dierckman asked the committee to reconsider its decision, contending that he was not the operator of the land constituting converted wetlands and any work he performed on the disputed area ended by November 28, 1990, the trigger date for the more stringent Swampbuster provision. (AR2 at 054–055.) The committee rejected Dierckman's appeal, finding him responsible for the wetlands converted after November 28, 1990.

On March 16, 1994, Dierckman appealed to the state FSA committee, who proceed-

ed to hand down Dierckman's first favorable decision in this matter. The committee determined "that although Jerry [Dierckman] may have been associated with the conversion of the wetland, he had no control over his father's decision to finish clearing the wetland after he was told to stop by SCS." (AR2 35B.) Accordingly, the state committee requested that the Franklin County Committee review its determination that Dierckman is ineligible for USDA subsidies. In response, the county committee reaffirmed its earlier decision that Dierckman is ineligible. (AR2 027.) The Deputy Administrator for the State and County Operations (DASCO) also was asked by the state committee to review the eligibility determination. Upon review, DASCO agreed with the county committee that Dierckman is ineligible for subsidies. (AR2 at 021.)

Dierckman then appealed to the FSA national office, the final level of administrative appeals, by letter of May 17, 1994. On January 17, 1995, FSA denied the appeal, concluding that Dierckman was the operator of the converted wetlands and, thus, ineligible for subsidies. (AR2 at 002–006.)[2]

The United States now seeks to collect the subsidies that the USDA paid Dierckman in 1991, 1992 and 1993, which amounts to $92,703.00.

### III. *DISCUSSION*

Dierckman requests that we overturn the wetland and conversion decisions on the grounds that the wetland at issue is not covered by the Food Security Act. Dierckman also contends that the eligibility determination should be overturned because (1) the agency failed to provide a rationale basis for its conclusion that Dierckman violated the Swampbuster provisions of the Food Security Act, (2) the

2. Dierckman moves to supplement the administrative record with (1) a March 4, 1991 letter to Dierckman from Gribben, the district conservationist, and (2) the declaration of

Robert W. Wolfe, with accompanying resume and maps. Neither document impacts our holding. Accordingly, the motion to supplement is *DENIED* as *MOOT*.

USDA regulation on which the agency based its eligibility decision is void because it is inconsistent with the Act, and (3) the Act and its implementing regulations violate the substantive due process clause.

## A) THE WETLAND AT ISSUE IS SUBJECT TO THE FOOD SECURITY ACT

■ Dierckman first contends that the wetland at issue is not subject to the Food Security Act because it does not effect interstate commerce. According to Dierckman, both the Act itself and the United States Constitution require that a wetland effect interstate commerce in order to fall within the Act's jurisdiction.

First, the Food Security Act clearly does not limit itself to wetlands that effect interstate commerce. Dierckman cites no language in the Act suggesting such a limitation, while acknowledging the absence of any case law involving the Food Security Act supporting his position. The only support Dierckman presents is an analogy to the Clean Water Act. Unfortunately for Dierckman, the language in the Clean Water Act on which he relies is not parallel to the Food Security Act.[3] In any event, we find no rationale that supports Dierckman's position. Hence, we *DENY* Defendant's motion for summary judgment on this ground.

Dierckman's contention that the Constitution restricts the Act's jurisdiction to wetlands that effect interstate commerce must suffer a similar fate. Congress passed the Food Security Act pursuant to the Spending Clause of the Constitution, not the Interstate Commerce Clause. The Supreme Court has clearly, and repeatedly, declared that "Congress may further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483 U.S. 203, 206, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987) (*quoting Fullilove v. Klutznick*, 448 U.S. 448, 474, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980) (opinion of Burger, C.J.)). Moreover, Congress, acting pursuant to its spending authority, frequently, and with unrelenting success, has promulgated legislation to advance the general welfare that reaches beyond its other enumerated Constitutional powers. *See id.* (collecting cases). To be sure, the Spending Power is not limited to subjects that effect "interstate commerce." *See id.*[4] Neither the Constitution, nor the language of the Food Security Act itself, restricts the scope of the Act to wetlands that effect interstate commerce. Accordingly, Dierckman's motion for summary judgment on the grounds that the wetland at issue is not subject to the Food Security Act is *DENIED*.

## B) THE AGENCY DETERMINATIONS ARE NOT ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW

### (1) *Standard of Review*

■ The agency determinations at issue are reviewable under the Administrative Procedures Act (APA), 5 U.S.C. §§ 702–706. The scope of judicial review under the APA is limited to whether the agency decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in

3. The government moves to strike a Memorandum of Agreement (MOA) signed by the USDA, which was submitted by Defendant in support of his Reply Memorandum. The MOA provides that wetlands should be identified consistently under the Clean Water Act and the Swampbuster provision. It does not address, however, whether the Swampbuster should include the additional requirement that the wetland effect interstate commerce, a requirement that Dierckman contends the Clean Water Act has. Although the MOA is not very helpful to Dierckman's position, it is relevant and admissible. Therefore, the government's motion to strike is *DENIED*.

4. Furthermore, none of the actual limits on the Spending Power are applicable in this case. *See Dole, supra; State of Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir.1989).

accordance with law." 5 U.S.C. § 706(2)(A); *see Bagdonas v. Dept. of Treasury*, 93 F.3d 422, 425 (7th Cir.1996). That standard of review is a narrow, highly deferential one. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). "[We] must consider the agency action valid as long as it appears from the administrative record that the decision was supported by a 'rational basis.'" *Bagdonas*, 93 F.3d at 425–26. However, narrow and deferential review does not equate with no review at all. *Id.* The inquiry still must be thorough and probing. *Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823. Most importantly, although the court is to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), it may not supply a reasoned basis for the agency's action that the agency itself has not given. *Bagdonas*, 93 F.3d at 426; *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). "The statement of reasons need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Id.* (*quoting Kitchens v. Department of the Treasury*, 535 F.2d 1197, 1200 (9th Cir.1976)). We must satisfy ourselves that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (*quoting Burlington Truck Lines, Inc. v. United*

*States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)).

*(2) Wetland and Conversion Determinations Stand*

Other than the previously discussed contentions, Dierckman does not contest the wetland and conversion determinations. (*See* Defendant's Response to the United States' Motion for Summary Judgment at pages 1–2.) In any event, both decisions are supported by a substantial body of evidence and clearly are not arbitrary or capricious.

*(3) Ineligibility Determination Stands*

The ineligibility determination is the heart of this dispute. The National Office of the FSA made the final agency decision regarding Dierckman's eligibility for subsidies, concluding:

> [t]he record shows SCS determined the wetland conversion took place in 1991. Our review shows [Dierckman] was clearly the operator of the converted wetland acreage in 1991 and the ensuing reconstitution separating the converted wetland property from the remainder of the farm does nothing to relieve him of the repercussions of the 1991 wetland conversion violation.[5]

(AR2 006.)[6] In support of its decision, the FSA made the following relevant findings of fact:

1. Form ASCS–211, Power of Attorney, was completed by [Dierckman] and Milton J. Dierckman on November 16, 1989, October 1, 1990, and October 26, 1990. The notarized instruments appointed [Dierckman] the true and lawful attorney for and in the name, place and stead of the

---

**5.** While Dierckman's appeal to the Chief of SCS was pending, he requested that the area designated as wetlands or converted wetlands be separated from the rest of the farm and designated by SCS as Farm 3250, Tract 9305. (AR1 50–51.) Dierckman does not contend that the redesignation effects or is relevant to the disposition of this case.

**6.** The FSA County Committee also concluded "that [ ] Dierckman's appeal would be denied, since he was the operator of the farm at the time of the wetland violation." (AR2 055.)

undersigned (Milton J. Dierckman) in connection with all agricultural programs under the jurisdiction of the USDA, administered through county committees.

2. Form CCC–477, Contract to Participate in the 1991 Price Support and Production Adjustment Programs, were completed and signed by [Dierckman] for farm number 3051 on April 26, 1991. Dierckman initialed the form as the participating operator and indicated he was entitled to a 100 percent share of the crops and payments.

3. Form CCC.502A, Farm Operating Plan for Payment Limitation Review for an Individual, was filed and signed by [Dierckman] on April 26, 1991, for the 1991 crop-year. Farm number 3051 was listed by [Dierckman] as a farm owned and/or leased and operated by him for the 1991 crop year.

4. Form AD–1026, Highly Erodible Land and Wetland Certification, was completed by [Dierckman] for the 1991 crop-year on January 7, 1991. [Dierckman] indicated on the AD–1026 that he intended to produce an agricultural commodity on land, including wet areas that were or will be improved, maintained, drained, modified, or converted after December 23, 1985. [Dierckman] also indicated on the AD–1026 that he planned to convert land, including wet areas, for the production of an agricultural commodity during 1991.

(AR2 at 005.)

Dierckman seems to advance two arguments regarding the eligibility determination. First, he argues that the agency failed to establish a rational link between his being the operator of the wetland and being ineligible for USDA subsidies under the Swampbuster provision. Second,

Dierckman argues that the determination ·that he was the operator of the converted wetland after November 20, 1990 is erroneous.

Dierckman's first contention is quickly dismissed. The agency's determination that Dierckman violated the Swampbuster provision of the Act because he was the operator of the converted wetlands is entirely consistent with USDA regulations promulgated pursuant to the Food Security Act. Specifically, 7 C.F.R. § 12.4(e)(2) (1994) provides that "a person shall be determined ... to have converted a wetland. if ... [ ]SCS has determined that the person is or was the owner or operator of the land...." [7]

■ Dierckman, however, maintains that none of the findings of fact establishes that he was the operator of the converted wetland after November 28, 1990. We disagree. The USDA regulations define "operator" as "a person who is in general control of the farming operations on the farm during the crop year." 7 C.F.R. § 12.2(a)(20). The facts cited by the agency demonstrate Dierckman's general control over the land at issue. The findings of fact also support the conclusion that Dierckman was the operator of the land *after November 28, 1990*, since many of the forms noted by the agency's findings were completed by Dierckman during 1991 and referred to his general control over the farm in 1991. Accordingly, the agency's decision that Dierckman operated the converted wetlands after November 28, 1990 is not arbitrary or capricious. From there, the USDA regulations make it clear that, since Dierckman operated the wetland during the conversion, he is ineligible for USDA subsidies as "any person who converts a wetland." *See* 7 C.F.R. § 12.4(e)(2). The agency's final conclusion that Dierckman is ineligible for USDA subsidies is therefore consistent with

---

7. Absent the USDA regulation which equates an operator and "any person who converted a wetland," there is nevertheless a rational relationship between the findings of fact cited by FSA and the conclusion that Dierckman is "any person who converted a wetland."

USDA regulations and not arbitrary or capricious.

## C) 7 C.F.R. § 12.4(e)(2) IS CONSISTENT WITH THE FOOD SECURITY ACT

Dierckman next contends that the regulation which supports the eligibility determination—7 C.F.R. § 12.4(e)(2)—is void because it is inconsistent with the Food Security Act. During the relevant time, the Food Security Act provided that "any person who in any crop year subsequent to November 28, 1990, converts a wetland ... shall be ineligible...." 16 U.S.C. § 3821(b). Dierckman argues that 7 C.F.R. § 12.4(e)(2) creates strict liability for operators that the Act did not intend.

■ The United States Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), held:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 843–84, 104 S.Ct. at 2781–82; *see also Nat'l Credit Union Administration v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 118 S.Ct. 927, 932, 140 L.Ed.2d 1 (1998); *Bankers Life and Casualty Co. v. United States*, 142 F.3d 973 (7th Cir.1998).

In this case, the issue before us involves the scope of the phrase "any person who converts a wetland," as it appears in the Food Security Act. Dierckman contends that the statute is unambiguous and provides that only the person who actually did the work to convert the wetland is "any person who converts a wetland." This interpretation, however, is not clear on the face of the statute. The statute does not define the phrase or otherwise indicate the degree of involvement necessary to be considered any person who converts a wetland. Limiting the phrase to include only those with "hands on" involvement in the conversion is not the sole reasonable interpretation of the statutory language; there are multiple reasonable interpretations of this language. In short, Congress did not address the specific question now before us and left the scope and precise meaning of the phrase ambiguous.

Thus, we address whether the agency's interpretation of the statute is reasonable. The relevant USDA regulation provides that the statutory phrase "any person who converts a wetland" includes within its scope the operator of a wetland that is converted to farm land. *See* 7 C.F.R. § 12.4(e)(2). Dierckman contends that this interpretation of the Act creates strict liability for farm operators that Congress did not intend.

It is entirely reasonable for the phrase "any person who converts a wetland" to refer to more than just those persons who physically converted the land. Otherwise, one could simply hire a construction company to convert a wetland to avoid being considered "any person who converts a wetland," a result clearly in contravention of Congress' intent. The USDA's interpretation contemplates that Congress intended to include those who were responsible for the conversion, not simply those that actually physically converted the wetland. By including operators of the converted wetland in the definition of "any person who converts a wetland," the USDA included the person in control of

the wetland at the time of the conversion, that is, a person arguably in control of the decision making with respect to the conversion of the wetland. The fact that the conversion occurred under the operator's control demonstrates that the operator, at the very least, acquiesced in the conversion. Moreover, despite Dierckman's arguments to the contrary, innocent operators are not doomed under the USDA's interpretation. The statute's good faith provision provides an exemption for those whose involvement in the conversion was done in good faith. *See* 7 C.F.R. § 12.6(b)(1) (viii). The USDA's interpretation clearly is reasonable and consistent with the statute's purpose. *See Gunn v. United States Department of Agriculture*, 118 F.3d 1233, 1238 (8th Cir.1997) (agency interpretation of the Food Security Act was sufficiently plausible to meet *Chevron* test). Accordingly, the USDA's interpretation of the Food Security Act, as expressed in 7 C.F.R. § 12.4(e)(2), is enforceable under the Act.

D) *THE FOOD SECURITY ACT AND ITS · IMPLEMENTING REGULATIONS DO NOT VIOLATE SUBSTANTIVE DUE PROCESS*

█ Finally, Dierckman contends that the Food Security Act and its implementing regulations violate the Substantive Due Process Clause of the Fifth Amendment to the Constitution because the ineligibility sanction is applicable to an operator even when the owner was the person who, in fact, converted the wetland.

"It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, .2717, 81 L.Ed.2d 601 (1984). To satisfy the substantive due process clause, the legislation must simply have a rational basis. *Id.*; *Northside Sanitary Landfill v. Indianapolis*, 902 F.2d 521 (7th Cir.1990).

The Food Security Act and its implementing regulations easily clear the substantive due process hurdle. Deciding that both the owner and the operator (the person in general control of the farm) of wetlands converted to farm land are ineligible for USDA subsidies is consistent with the Act's obvious goal of preserving wetland. *See Gunn v. United States Department of Agriculture*, 118 F.3d 1233, 1238 (8th Cir.1997). The Act targets those in control of and responsible for the converted wetland, seeking to punish those who benefit from using the wetlands for agricultural purposes. It is reasonable to assume that the operator and owner are in the best position to ensure that the wetlands are. not converted and are also the ones benefiting from the conversion. Although "the swampbuster provisions may be characterized as harsh," that is Congress' prerogative so long as the legislation stays within the confines of the Constitution. *Von Eye v. United States*, 887 F.Supp. 1287, 1293 (D.S.D.1995). The Swampbuster provisions undoubtedly relate to Congress' goal of curtailing wetland conversion and do so within Constitutional limits. Accordingly, Defendant's Motion for Summary Judgment on substantive due process grounds is *DENIED*.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment on the wetland and conversion determinations is *DENIED* because the Food Security Act properly covers the wetlands and converted wetlands at issue. Defendant's motion for summary judgment on the eligibility determination is also *DENIED* because (1) the agency decision is not arbitrary or capricious, (2) the USDA regulations are not void for being contrary to the Food Security Act, and (3) the Food Security Act and its implementing regulations do not violate the Substantive Due Process

Clause of the Fifth Amendment of the Constitution. The Plaintiff's motion for summary judgment is *GRANTED* because the USDA's decision that Dierckman is ineligible for crop subsidies in 1991, 1992, 1993, and subsequent years warrants affirmance. Therefore, Dierckman must refund to the United States the $92,703.00 he improperly received as a result of his participation in the 1991–1993 Price Support and Production Adjustment Programs, plus interest on that amount.

## JUDGMENT

In accord with today's Entry in the above captioned cause, summary judgment is hereby entered in favor of Plaintiff on all of Plaintiff's claims and Defendant's counterclaims and against Defendant on his motion. Defendant is ordered to pay to the United States of America the amount of $92,703.00 plus interest.