**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry M. DIERCKMAN, Defendant–Appellant.**

No. 98–4131.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1999.

Decided Jan. 11, 2000.

---

Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

In 1993, the United States Department of Agriculture (USDA) declared Jerry Dierckman[1] ineligible for all USDA farm program benefits, retroactive to the 1991 crop year. Ineligibility was based on Jerry's violation of the Swampbuster provisions of the Food Security Act of 1985 (FSA), as amended by the Food, Agriculture, Conservation, and Trade Act (FACTA). The United States sued to recover the $92,703.00 in farm benefits paid to Jerry from 1991 to 1993. In that lawsuit, Jerry challenged the constitutionality of certain portions of the FSA and the validity of certain USDA regulations promulgated under the FSA, and he requested a declaration that his eligibility for benefits be reinstated. Both parties filed cross-motions for summary judgment, and on October 21, 1998, the district court granted summary judgment in favor of the government. Jerry appeals, and we affirm.

## I. LEGAL BACKGROUND

Congress adopted the Food Security Act on December 23, 1985. Pub. L. No. 99–198 (1985) (codified at 16 U.S.C. § 3801 *et seq.* (1986)). By enacting the FSA, Congress intended to "discourage the draining and cultivation of wetland that is unsuitable for agricultural production in its natural state." S. Rep. No. 99–145 at 303 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1103, 1969. To further this goal, Congress included the Swampbuster provision of the FSA, which, in its initial form, stated that "following December 23, 1985, any person who in any crop year produces an agricultural *commodity* on converted wetland shall be ineligible for" various USDA farm benefit programs. 16 U.S.C. § 3821 (1986).

Jill E. Zengler (argued), Office of U.S. Attorney, Indianapolis, IN, for plaintiff-appellee.

David E. Dearing (argued), Indianapolis, IN, for defendant-appellant.

1. The opinion will refer to the defendant-appellant Jerry Dierckman as Jerry because Jerry's father, Milton Dierckman, figures substantially into the story. Jerry's father will be referred to as Milton. This should prevent any confusion.

In 1990, Congress decided to toughen up Swampbuster in the Food, Agriculture, Conservation, and Trade Act. *See* Pub. L. No. 101–624, Title XIV, § 1421(b)(1990) (codified at 16 U.S.C. § 3801 *et seq.* (1994)). While retaining the original 1985 provision, FACTA added a new provision which provided that "any person who in any crop year subsequent to November 28, 1990, converts a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland shall be ineligible for" USDA farm benefits. 16 U.S.C. § 3821(b)(1994).[2] After the 1990 Swampbuster amendments, a person could become ineligible for USDA farm benefits either by (1) converting wetland *and* growing crops on the land if the conversion was accomplished after December 23, 1985, or (2) merely converting wetland after November 28, 1990, so that crops *could* be grown on the land. *See* 16 U.S.C. § 3821 (1994); 7 C.F.R. § 12.4 (1994).

The ineligibility determination under the Swampbuster provisions involves multiple agencies within the USDA. The Soil Conservation Service (SCS)[3] determines whether a wetland or converted wetland exists on a particular farm and whether production of a crop is possible on any converted wetland. *See* 7 C.F.R. § 12.6(c). The initial SCS determination is made by the district conservationist. *See id.* The district conservationist's decision is appealable to the area conservationist, then to the state conservationist, and finally to the Chief of the SCS at USDA headquarters in Washington, D.C. *See id.* After the SCS makes its technical determination regarding the existence or conversion of a wetland, another USDA agency, the Agricultural Stabilization and Conservation Agency (ASCS),[4] determines whether any exemptions apply to the conversion of the wetland. *See* 7 C.F.R. § 12.6(b). The ASCS then determines the eligibility of any farmer who applies to the ASCS for USDA farm benefits. *See* 7 C.F.R. § 12.6(a). These ASCS determinations are first made by an ASCS county committee. An appeal can be taken to the appropriate state committee, then to the Deputy Administrator for State and County Operations (DASCO) and finally to the National Appeals Division (NAD) of the ASCS. *See* 7 C.F.R. § 12.6(b).

## II. FACTUAL BACKGROUND

The facts of this case can be nicely segmented into three phases. In the first phase, the SCS determined that wetlands and converted wetlands were present on Jerry's farm but that no Swampbuster violation existed as of early 1991. In the second phase, the SCS determined that additional conversions took place in 1991 in violation of the Swampbuster provision prohibiting the conversion of a wetland

---

**2.** In amending 16 U.S.C. § 3821 in 1990, Congress renumbered the original Swampbuster provision as § 3821(a). Congress has since amended § 3821 again. *See* Pub. L. No. 104–127, Title III, Subtitle C, § 321 (1996). The original Swampbuster provision in the FSA, as amended, is still codified as § 3821(a). The 1990 Swampbuster provision added by FACTA is now codified as § 3821(c) instead of § 3821(b), as it was originally codified. All further references to Swampbuster provisions and all citations in this opinion will be to the 1994 editions of the United States Code and Code of Federal Regulations, which contain the versions of the statute and regulations in effect at all times relevant to this appeal.

**3.** The SCS has since been abolished, and its functions have been transferred to the Natural Resources Conversation Service. *See* Pub. L. No. 103–354, § 246 (1994) (codified at 7 U.S.C. § 6962). However, because the SCS was operating during all times relevant to this appeal, the opinion will refer to the SCS throughout.

**4.** The ASCS has been replaced by the Farm Service Agency. *See* Pub. L. No. 103–354, § 226 (1994) (codified at 7 U.S.C. § 6932) (replacing the ASCS with the Consolidated Farm Service Agency (CFSA)); 60 Fed. Reg. 56,392 (Nov. 8, 1995) (renaming the CFSA as the Farm Service Agency). The ASCS was operative during all times relevant to this appeal, and the opinion will refer to the ASCS throughout.

after November 28, 1990. In the third phase, the ASCS determined that both Jerry and Milton were ineligible for all USDA farm benefits as a result of the conversion.

### A. The Wetland Determination

Jerry Dierckman is a farmer who grows crops both on his own land and on land that he rents from others, including his father, Milton Dierckman. The land relevant to this appeal is located in Franklin County, Indiana, and Jerry rented it from his father. In 1986, Milton cut down the trees on roughly the eastern two-thirds of the northern portion of this property. The stumps were left in the ground for a number of years afterwards—thus continuing to preclude farming on that portion of the farm—but in August of 1990, Gunter Excavating Company (Gunter) was hired to dig up the stumps, fill the holes and haul the stumps away. On September 3, 1990, Gunter issued a written proposal to Jerry concerning the work, and Gunter began work shortly thereafter. Gunter issued a bill for its work to Jerry on September 25. The bill shows "work ordered by" Jerry, but Milton paid this bill on October 10. Due to heavy rains in October of 1990, the excavating machinery bogged down, and Gunter could not continue its work of removing tree stumps. For the next several months, the land remained in the same condition, with some holes filled, some stumps remaining in the ground, other stumps scattered about the property and some holes left unfilled.

Jerry wanted USDA farm benefits for the land that he had rented from his fa-

ther. In order to receive these farm benefits from the USDA for the 1991 crop year, Jerry was first required to get his eligibility certified. On January 7, 1991, Jerry completed ASCS Form AD–1026, entitled "Highly Erodible Land and Wetland Conservation Certification." AR, vol. 1 at 199.[5] On this form, Jerry indicated that he intended to convert "wet areas" and intended to grow crops on converted "wet areas" on his farm.[6] Needless to say, these responses attracted the attention of the ASCS, which referred the matter to the SCS. After receiving the referral, the SCS set out to determine if any of Jerry's "wet areas" were wetlands protected by the Swampbuster provisions of the United States Code. In March of 1991, an SCS district conservationist determined that the northern portion of Jerry's farm contained both wetlands and converted wetlands. AR, vol. 1 at 191. The district conservationist determined that the conversion of the wetlands had begun in August of 1990 but had ended before the more stringent Swampbuster provision went into effect on November 28, 1990. Thus, with respect to the already converted wetlands, Jerry was not in violation of Swampbuster because no crops had been planted on them. The district conservationist informed Jerry that any additional conversion of any additional wetlands, however, would be a Swampbuster violation, whether crops were grown or not. AR, vol. 1 at 191. After the district conservationist's determination, Jerry filed another Form AD–1026, this time stating that he had no plans to convert wet areas on the land.[7] On March 19, 1991, however,

5. Citations to the Certified Administrative Record will follow this format: AR, vol. [1 or 2] at [page].

6. Question 5 on Form AD–1026 read: "Will an agricultural commodity be produced on any land, including wet areas, on the farm(s) listed on AD–1026A that was or will be improved, maintained, drained, modified, or converted after December 23, 1985? *If 'YES', check the appropriate Tract Number in column 13 of attached AD–1026A."* And Question 6 read: "Do you plan to convert any land, including wet areas, for the production of an

agricultural commodity this year or during the term of a requested USDA loan or other program benefit? *If 'YES', check the appropriate Tract Number in column 14 of attached AD–1026A."* Jerry Dierckman answered "YES" to each of these questions. AR, vol. 1 at 199.

7. He indicated this by answering "NO" to questions regarding conversion of wet areas on a new Form AD–1026 dated April 26, 1991. The format of the AD–1026 had changed, but the substance of the questions remained the same. AR, vol. 1 at 187.

Jerry had appealed to the area conservationist the determination that the farm contained wetlands, stating: "I request a redetermination and permission to continue to clear the area in question.... Intended land use will be hayland, permanent pasture." AR, vol. 1 at 197.

On May 17, 1991, the area conservationist denied the appeal, and on July 11, the area conservationist's determination was affirmed by the state conservationist after members of the state conservationist's wetland appellate review team visited the farm and performed some field tests. In September of 1991, the administrative appeal process for the wetland determination ended with the affirmance by the SCS of the state conservationist's determination. In a letter to Jerry Dierckman dated September 27, the Chief of the SCS explained its conclusions: "We have determined that the areas in standing trees and stumps are wetlands (W), and the areas where the stumps have been removed are converted wetlands (CW). This decision supports the earlier decision of the SCS State Conservationist...." AR, vol. 1 at 127. The Chief also explained that because the converted wetlands had been converted before November 28, 1990, and crops had not been grown on those converted wetlands, there had been no Swampbuster violation as of that time. *Id.* The Chief further made clear that any additional conversion activity would result in USDA ineligibility. *Id.*

### B. The Conversion Determination

On December 18, 1991, the district conservationist and an SCS technician visited the part of Jerry's farm previously designated as wetlands and noticed changes to the property. Since their visit the prior spring, some additional stumps had been

removed from the ground and moved into rows, the holes had been filled and the land appeared to have been root raked. The ground was now farmable. The visitors concluded that this work had occurred after November 28, 1990, and constituted a conversion of a wetland. They designated the land "CW + 91," signifying that a Swampbuster violation had taken place in 1991, and notified Jerry of the finding by letter on January 31, 1992. AR, vol. 1 at 122–25. Jerry responded by phone on February 3, for the first time making an argument that he would repeat throughout the administrative appeals process and still repeats in this court: Jerry told the district conservationist that his father, Milton Dierckman, owned the tract and that Milton was going to continue to "improve" the land. Jerry added, in an obvious attempt to exonerate himself, "I have no control over the ground. Dad owns it. I just rent it." AR, vol. 1 at 121.

In July of 1992, Jerry met with SCS officials at the farm. Further conversion had taken place, and only a small wooded section remained untouched. Jerry (and his mother, who was also present) again explained that the conversion was Milton's doing. The notes of the meeting indicate that the SCS agent asked Jerry "if he had checked with the ASCS office to see if the records could be changed to only show him ... as the renter[] of the cropland." AR, vol. 1 at 92. Jerry responded that he had "had no dealings with the ASCS office." *Id.*[8]

Although he supposedly had no control over the wetlands, Jerry pursued an appeal that was rejected by the area conservationist on July 17, 1992. The determination that wetlands had been converted after November 28, 1990, was subsequent-

---

8. The agent's notes continue: "I checked with the Jennings County ASCS when I returned[, and] they said that the farm could be [reconstituted] by an operator to only show him as operator of the cropland and the owner could be shown as the owner and operator of the wooded part." AR, vol. 1 at 92–93. However, rather than pursuing reconstitution, Jerry had continued to list himself as the "operator" of the farm and filed another Form AD–1026 with the ASCS, this time for the 1992 crop year. On that form, dated March 2, 1993, Jerry indicated that he had converted or he would convert wetland to make it farmable. AR, vol. 2 at 140.

ly affirmed by the state conservationist. In its letter of September 15, 1992, the SCS again urged Jerry to contact his local ASCS office to discuss his status as operator with respect to USDA program benefits. Finally, on October 28, 1993, the Acting Chief of the SCS rejected Dierckman's final appeal. Jerry was advised that any conversion taking place after November 28, 1990, that made agricultural production possible would result in the loss of eligibility until the area designated CW+91 was restored.

### C. Ineligibility determination

The SCS referred the matter to the Franklin County ASCS Office, explaining that its wetlands and conversion inquiries were complete with its having found that Jerry Dierckman had converted wetlands after November 28, 1990. At a regular session meeting on November 17, 1993, the county ASCS committee discussed the SCS's final determinations in the Dierckman matter, and determined that both the owner, Milton Dierckman, and the operator, Jerry, were the producers responsible for the conversion. Therefore, both were declared ineligible for USDA farm benefit payments on all land that they owned and operated. Jerry asked the committee to reconsider on the grounds that he was not the operator of the land constituting converted wetlands and that any work *he* performed had ended before the November 28, 1990, trigger date for the more stringent Swampbuster provision. The committee rejected this argument in January of 1994, stating that, after reviewing all the facts, it determined that Jerry was the operator of the farm—which "means the total farm, not just the cropland"—and was therefore ineligible. AR, vol. 2 at 48A.

Jerry appealed to the state ASCS, and received his first favorable decision. The committee determined that "although Jerry may have been associated with the conversion of the wetland, he had no control over his father's decision to finish clearing the wetland after he was told to stop by the SCS." AR, vol. 2 at 35B. The state body requested that the county grant Jerry's requested relief, but the county committee refused to reverse its determination, and the appeal continued up the chain. The Deputy Administrator for State and County Operations found Jerry ineligible for subsidies "because there is evidence that Jerry Dierckman was in general control of the operation on the wetland area in question. . . ." AR, vol. 2 at 21. Jerry appealed this decision to the ASCS National Appeals Division, but the NAD denied his appeal by letter on January 17, 1995. Thus, Jerry was ineligible for USDA subsidies retroactive to the 1991 crop year.

### D. Proceedings Below

The United States sued Jerry to recover the benefit payments it had made during the 1991, 1992 and 1993 crop years, totaling $92,703.00. Jerry challenged the United States' claim on the ground that the wetland at issue is not covered by the FSA. He also challenged the ineligibility determination because: (1) the agency fails to provide a rational basis for its conclusion that Jerry violated the Swampbuster provisions of the FSA, (2) the USDA regulation mandating his ineligibility is void because it is inconsistent with the FSA and (3) the FSA and its implementing regulations violate substantive due process. The district court upheld all of the administrative determinations and found for the United States on summary judgment. *See United States v. Dierckman*, 41 F.Supp.2d 870 (S.D.Ind.1998). This appeal followed.

### III. DISCUSSION

In his appeal to this court, Jerry Dierckman makes basically the same challenges as he did in the district court. He argues that the wetland in question is outside the reach of the FSA. He also argues that the agency regulation on which the USDA based its decision is outside the scope of the FSA and that the agency failed to provide a rational basis for its conclusion that Jerry violated the Swampbuster pro-

vision of the FSA. Finally, Jerry argues that the FSA and its implementing regulations violate substantive due process.

### A. The Reach of the FSA

■ Jerry asserts that because the wetland on his farm is isolated and has no connection to interstate commerce, it cannot be regulated under the Food Security Act. His argument centers on an analogy to the Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq.* (1999), which prohibits the discharge of pollutants into the waters of the United States. Because the "wetlands" regulated by the FSA are a subset of the waters of the United States regulated by the CWA, Jerry argues, regulation of an intrastate wetland is only valid if the appropriate agency has determined that the wetland in question had at least *some* relationship to interstate commerce. Therefore, he concludes, because no agency has determined that the wetlands on his farm had a connection to interstate commerce, no federal agency has proper jurisdiction. But this analogy between the FSA and the CWA lacks force because, as the district court explained, "the language in the Clean Water Act on which he relies is not parallel to the Food Security Act." *Dierckman,* 41 F.Supp.2d at 874. Further, Jerry's argument overlooks the difference between direct congressional regulation under the Commerce Clause, which requires a connection to interstate commerce, and indirect regulation under the spending power, which does not. *Compare United States v. Lopez,* 514 U.S. 549, 559–60, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), *with South Dakota v. Dole,* 483 U.S. 203, 207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987).

The CWA directly regulates the chemical, physical and biological integrity of the Nation's waters, and "the geographical scope of the Act reaches as many waters as the Commerce Clause allows." *Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'rs,* 191 F.3d 845, 851 (7th Cir.1999). Therefore, Jerry is entirely correct that any potential target of CWA regulation must have some connection to interstate commerce. But, Jerry fails to provide a plausible reason why the limitations that narrow the application of the CWA should also limit the FSA.

■ Jerry's argument falters because it assumes that the FSA is a creature of the Commerce Clause. The FSA is not an exercise of direct regulatory power; instead, the FSA conditions the receipt of USDA farm benefits on the preservation of wetlands. This is indirect regulation invoking the spending power and is not limited by the enumeration of Congressional powers in Article I, section 8 of the Constitution. As the Supreme Court has explained:

> "[T]he power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution." Thus, objectives not thought to be within Article I's "enumerated legislative fields," [like the Commerce Clause,] may nevertheless be attained through the use of the spending power and the conditional grant of federal funds.

*South Dakota v. Dole,* 483 U.S. at 207, 107 S.Ct. 2793 (quoting *United States v. Butler,* 297 U.S. 1, 66, 56 S.Ct. 312, 80 L.Ed. 477 (1936)).

Even though Congress may lack the authority to regulate directly a strictly intrastate wetland, the incentive provided by the Food Security Act is a valid exercise of the spending power. In an attempt to avoid this conclusion, Jerry asserts that "there is no indication on the face of the FSA or in its legislative history that Congress has yet chosen to exercise this power by attempting to regulate water bodies that are traditionally the exclusive concern of the state." Appellant's Br. at 36–37. This certainly does not follow. Congressional intent to include intrastate wetlands could not be clearer on the face of the FSA: the Act defines both "wetland" and "converted wetland," *see* 16 U.S.C. §§ 3801(a)(4), (a)(16) (1994), without reference to interstate commerce or any defini-

tion applicable to the CWA.[9] The FSA conditions eligibility for USDA benefits on not converting wetlands or farming on converted wetlands, as defined. *See* 16 U.S.C. § 3821. This simple scheme clearly demonstrates Congress' intent to exercise indirect regulatory power "by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole,* 483 U.S. at 206, 107 S.Ct. 2793 (quoting *Fullilove v. Klutznick,* 448 U.S. 448, 474, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980)). Jerry's argument therefore fails.

### B. The Implementing Regulations

■■■ Jerry next argues that the USDA regulation which mandates his ineligibility—namely 7 C.F.R. § 12.4(e)—is void because it is inconsistent with the FSA. Jerry characterizes the regulation as extending liability to a farm "operator" who has played no role in the wetland conversion; he further argues that the plain language of the Swampbuster provision prohibits this extension.[10] After a thorough consideration of Jerry's argument, we find that the regulations easily survive his challenge.

9. Jerry also relies on a Memorandum of Agreement between the USDA and agencies in charge of administration of the CWA. The agreement shows, at best, that the agencies agreed to use consistent definitions for "wetland" and "converted wetland." This agreement in no way would make the FSA and the USDA subject to the jurisdictional and constitutional limitations of the CWA and the agencies responsible for its implementation.

10. Jerry's argument, so stated, has both a legal and a factual predicate. He claims as a fact that he had nothing to do with the conversion, and then states that to hold him liable, given his innocence, is legally beyond the scope of the FSA. We first address the legal aspect of his argument because, if the regulation is invalid, the agency's findings of fact are irrelevant, and Jerry wins. However, if the regulation employs a valid method for determining ineligibility, then we must decide if the agency followed the regulation faithfully in finding Jerry ineligible. If it did, he loses.

11. This section stated, in part:

■■■■] We review USDA regulations under the Administrative Procedure Act, and we may set aside the agency action only if the regulations are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)(1999). Because Congress expressly authorized the USDA to promulgate regulations on ineligibility, *see* 16 U.S.C. § 3844 (1994),[11] we review the USDA's regulations within the framework established by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Hanson v. Espy,* 8 F.3d 469, 472–73 (7th Cir.1993). The starting point of this analysis is, of course, the language of the statutory Swampbuster provisions,[12] and if "the plain meaning of the text of the statute either supports or opposes the regulation," the inquiry ends, and this court applies the statute's plain meaning. *Solid Waste Agency,* 191 F.3d at 851. If the statute is silent or ambiguous, "the court must defer to the agency interpretation so long as it is based on a reasonable reading of the statute." *Id.; see also Hanson,* 8 F.3d at 473.

Jerry's challenge to the regulation depends on defining the scope of the phrase "any person who converts a wetland."[13]

[T]he Secretary shall issue such regulations as the Secretary determines are necessary to carry out this chapter, including regulations that
. . .
(2) govern the determination of persons who shall be ineligible for program benefits . . ., so as to ensure a fair and reasonable determination of ineligibility . . . .
16 U.S.C. § 3844 (1994) (since omitted in general revision to statute by Pub.L. No. 104–127, Title III, Subtitle E, § 341 (1996)).

12. The first step of *Chevron* focuses on the *text* of the statute, leaving legislative history for the second step. *See Bankers Life & Casualty Co. v. United States,* 142 F.3d 973, 983 (7th Cir.1998) ("While this circuit has examined legislative history during the first step of *Chevron,* we now seem to lean toward reserving consideration of legislative history and other appropriate factors until the second *Chevron* step.") (citations omitted).

13. At the time relevant to this action, the statute stated, in full:

Jerry argues that this phrase is unambiguous and demonstrates clearly that Congress intended "[o]nly the person who converts the wetland" to be ineligible for USDA benefits. Appellant's Br. at 22–23. He claims that the person who converts the wetland must be the person who actually brings about the conversion—*e.g.*, by draining, dredging, filling or leveling—or any person who *hires* another to perform the conversion. *Id.* at 26–27. This interpretation strikes us as a plausible reading, but nothing in the statutory text unambiguously compels such a reading.

The most obvious reading of the phrase "any person who converts a wetland" may denote an individual who physically converts wetlands—*i.e.*, who digs up the stumps, fills in the holes, etc. With that reading, only the excavation company—in this case Gunter—would be deemed ineligible for USDA farm benefits. Congress certainly intended to cover more than an excavator, but the precise contours of the phrase "any person who converts a wetland" do not leap from the text of the statute. Congress leaves us only with this ambiguous phrase; therefore, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778.

The regulations addressing ineligibility for farm benefits are found at 7 C.F.R. § 12.4. Jerry challenges 7 C.F.R. § 12.4(e), which provides that the statutory phrase "any person who converts a wetland" covers the operator of a wetland that is converted to farmland. The regulation states:

> For the purposes of paragraph (a)[14] of this section, a person shall be determined to have produced an agricultural commodity on a field in which highly erodible land is predominant or to have designated such a field as conservation use, to have produced an agricultural commodity on converted wetland, or to have converted a wetland, if:
>
> (1) SCS has determined that—
>
> (i) Highly erodible land is predominant in such field, or
>
> (ii) All or a portion of the field is converted wetland; and
>
> (2) ASCS has determined that the person is or was the owner or operator of the land, or entitled to share in the crops available from the land, or in the proceeds thereof.

7 C.F.R. § 12.4(e) (footnote added). The regulations defined an "operator" as "the person who is in general control of the farming operations on the farm during the crop year." 7 C.F.R. § 12.2(a)(20). In this case, the SCS determined that a portion of the field was converted wetland under § 12.4(e)(1)(ii) of the regulations.[15] Then the ASCS found that Jerry was the person who was in general control of the farming operations during the 1991 crop year. *See* §§ 12.4(e)(2), 12.2(a)(20). On this basis, Jerry was deemed to have converted the land.[16]

---

Except as provided in section 3822 of this title and notwithstanding any other provision of law, any person who in any crop year subsequent to November 28, 1990, converts a wetland by draining, dredging, filling, leveling, or any other means for the purpose, or to have the effect, of making the production of an agricultural commodity possible on such converted wetland shall be ineligible for those payments, loans, or programs specified in subsections (a)(1) through (3) of this section for that crop year and all subsequent crop years.

16 U.S.C. § 3821(b) (1994).

**14.** Section 12.4(a) echoes the language found in § 3821(b) of the statute, stating that "a person shall be ineligible for all USDA program benefits" if "[a]fter November 28, 1990, the person converts a wetland...." 7 C.F.R. § 12.4(a)(2).

**15.** Jerry apparently does not challenge the SCS's determination in this appeal. Thus, it is beyond doubt that there were converted wetlands that violated Swampbuster on the farm.

**16.** We address the agency's application of the regulation and factual findings in the next section of the opinion.

This regulatory interpretation of the phrase "any person who converts a wetland" is broad but not unreasonable. Jerry argues to the contrary because the regulations impose "strict and vicarious" liability on an "innocent" operator, and he points toward legislative history as supportive of his argument. We, however, find little to help him there. The legislative history does not do much more than repeat, mantra-like,the phrase "any person who converts a wetland." *See, e.g.,* S. Rep. No. 101–357 at 236 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4656, 4890 ("This new provision holds a person who converts a wetland ... "). Based on the legislative history, neither Jerry's nor the USDA's reading is unreasonable.

But Jerry further claims that an operator should not be charged with the actions of an owner because the owner has "ultimate" control over the land. However, under the regulations, before one can be considered an operator of a piece of land, such a person "must be in general control of the farming operations on the farm during the crop year." 7 C.F.R. § 12.2(a)(20). Thus, a measure of control over the land, even with respect to the owner, is explicit in the definition of "operator." It is, therefore, not unreasonable for the USDA to hold such a person in "control" responsible for the conversion of a wetland. If the operator is in fact in "control," he must at least have acquiesced in the conversion and to that extent is responsible for it. *See* 7 C.F.R. § 12.10.[17] On the present facts, to escape liability, Jerry must at least have done or said something to negate clearly his acquiescence in his father's actions and to put himself in opposition to them. *See infra* at 21–22.

The effect of the regulation is to make one who is in control of the farm and is seeking USDA benefits responsible for the conversion. Congress acknowledged that "[p]articipation in federal programs is voluntary, and participation has always carried with it certain responsibilities, obligations, and conditions." S. Rep. No. 101–357 at 231, *reprinted in* 1990 U.S.C.C.A.N. at 4885. The regulations serve to align the benefits with the burdens: one who seeks USDA benefits must make certain to meet the conditions which encumber them. In light of all these considerations, the regulations are not "unreasonable or contrary to the purposes of the statute or to clearly expressed legislative intent on the point in issue." *Jones v. Dir., Office of Workers' Comp. Programs, United States Dep't of Labor,* 977 F.2d 1106, 1110 (7th Cir.1992). Therefore, under *Chevron,* we uphold the agency regulation.

### C. Agency Findings of Fact

■ Jerry makes his most formidable argument by challenging the agency's determination that he was the "operator" of the converted wetlands. He argues that although he was the "operator" of all farmable land on the tract, he was *not* the "operator" of the wetlands. Jerry claims that his father, Milton, was the "operator" of the wetlands. If this is accurate, Jerry falls outside of the scope of § 12.4(e) and was improperly found ineligible for benefits. Although Jerry contends that the administrative record contains uncontradicted evidence that Milton alone was the decision maker and actor with respect to the conversion of the wetlands in 1991 and thereafter, and therefore in sole control, the ASCS disagreed. It found that Jerry was in general control of the farming operations and therefore the "operator" of the converted wetlands.

■ We may set aside agency findings of fact only if they are "arbitrary, capricious, an abuse of discretion, or other-

---

**17.** Although not cited by either of the parties, the USDA regulations explicitly suggest that acquiescence is grounds for ineligibility:

> All or any part of the [USDA benefits] may be withheld or required to be refunded if the person adopts or participates in adopting any scheme or device designed to evade, or which has the effect of evading, the provisions of this part. Such acts shall include ... acquiescence in, approval of or assistance to acts which have the effect of, or the purpose of, circumventing these regulations.

7 C.F.R. § 12.10.

wise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a highly deferential standard. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). But, of course, deference is not total. *Id.* at 415, 91 S.Ct. 814. And although we must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp. Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), we may not supply a reasoned basis for the agency's action that the agency itself has not given. *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The agency's decision "need not include detailed findings of fact but must inform the court and the petitioner of the grounds of the decision and the essential facts upon which the administrative decision was based." *Bagdonas v. Dep't of the Treasury,* 93 F.3d 422, 426 (7th Cir.1996) (quoting *Kitchens v. Dep't of the Treasury,* 535 F.2d 1197, 1199–1200 (9th Cir.1976)). This means that on the administrative record the decision must have a rational basis. *Bagdonas,* 93 F.3d at 425–26.

The National Appeals Division of the ASCS made the final decision here, applying the test of "general control of the farming operations on the farm." 7 C.F.R. § 12.2(a)(20). It found that "[Jerry Dierckman] was clearly the operator of the converted wetland acreage in 1991." AR, vol. 2 at 6. In coming to this conclusion, the agency relied on information that Jerry himself provided when he was seeking benefits for the land. In its written decision, the NAD made several specific findings of fact that supported its conclusion:

1. Form ASCS–211, Power Of Attorney, was completed by [Jerry Dierckman] and Milton J. Dierckman on November 16, 1989, October 1, 1990, and October 26, 1990. The notarized instruments appointed [Jerry] the true and lawful attorney for and in the name, place and stead of the undersigned (Milton J. Dierckman) in connection with all agricultural programs under the jurisdiction of the USDA, administered through county committees.

2. Form CCC–477, Contract To Participate in the 1991 Price Support And Production Adjustment Programs, was completed and signed by [Jerry] for farm number 3051 on April 26, 1991. [Jerry] initialed the form as the participating operator and indicated he was entitled to a 100 percent share of the crops and payments.

3. Form CCC 502A, Farm Operating Plan For Payment Limitation Review for an Individual, was filed and signed by [Jerry Dierckman] on April 26, 1991, for the 1991 crop-year. Farm number 3051 was listed by [Jerry] as a farm owned and/or leased and operated by him for the 1991 crop year.

4. Form AD–1026, Highly Erodible Land and Wetland Certification, was completed by [Jerry] for the 1991 crop-year on January 7, 1991.[He] indicated on the AD–1026 that he intended to produce an agricultural commodity on land, including wet areas that were or will be improved, maintained, drained, modified or converted after December 23, 1985. [Jerry] also indicated on the AD–1026 that he planned to convert land, including wet areas, for the production of an agricultural commodity during 1991.

AR, vol. 2 at 5. Jerry maintains that none of these facts establish that he was the operator of the *wetlands.* But in his filings submitted to the USDA, he had labeled himself the "operator" of the farm and implicitly also of the wetlands that were part of the farm.[18]

---

18. The administrative record also contains evidence, beyond forms he filled out, that support the conclusion that Jerry was the "operator" of the wetlands. When DASCO determined that Jerry should be ineligible for benefits, it did so stating:

Although Jerry characterizes himself as helpless and punished for the whims of his father, there were several paths he could have chosen to avoid the ineligibility sanction. As we have noted, Jerry should have done what he could to stop his father's conversion activities and to negate his acquiescence in those activities. *See supra* at 920–21. Also, he could have declined to seek USDA benefits for this particular farm, thus dodging the USDA's authority to deny him benefits on his other farmland. And had Jerry wanted to effectively disclaim control over the wetlands in question, he could have requested reconstitution of the farm, separating the wetlands and the cropland into separate administrative units.[19]  7 C.F.R. pt. 719 (1994). But instead of negating acquiescence, foregoing benefits or requesting reconstitution, Jerry continued to pursue USDA benefits and continued to label himself the "operator" of the undivided farm, pursuing administrative appeals of the wetland determination to the national level. And, while it is true that Jerry repeatedly told the SCS that he had no control over his father's actions, he produced little or no evidence that he actually tried to stop the conversion.[20]  Thus, it was not arbitrary or capricious for the ASCS to find that Jerry was the "operator" of the wetland when it was converted. On that basis, he is ineligible for farm benefits under 7 C.F.R. § 12.4(e).

### D. Substantive Due Process

Jerry finally challenges the assessment of liability on the grounds that

> [T]here is evidence that Jerry Dierckman was in general control of the operation on the wetland area in question as follows:
> · Jerry Dierckman was actively involved in appeals to SCS regarding the wetland determinations on the area prior to the violation.
> · A job work order was billed to Jerry Dierckman on September 25, 1990, for clearing stumps on the wetland area, which indicates that Jerry Dierckman did have general control over the activities on the converted wetland. The bill also shows *Jerry* in the "Work Ordered By" item.

the FSA and its implementing regulations violate substantive due process because they irrationally penalize the operator even though it was the owner who did the conversion. This is a most unpromising argument because "[i]t is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). Jerry claims that it is irrational to attempt to deter wetlands conversion through an ineligibility sanction imposed on an operator. Jerry contends that because an owner would be undeterred by an operator's loss of benefits, sanctioning an operator is a vain exercise. We must disagree.

The owner and the operator share control of the land, and, to the extent each is penalized for the conversion of wetlands, the purposes of Swampbuster will be furthered. Sanctions fall on owners and operators who could potentially benefit from agricultural conversion of their land, thus providing both with incentives to prevent conversion. The legislation and regulations have a rational basis, and they survive Jerry's substantive due process challenge.

AR, vol. 2 at 21.

**19.** This was actually done during the administrative appeal process, but Jerry does not argue that it has any bearing on the outcome of this appeal.

**20.** We also note that Jerry produced no evidence that his father has thwarted any attempts to *restore* the converted wetlands. Apparently, Jerry has made no such attempt even though he could regain some benefits by restoring the land. *See* 7 C.F.R. § 12.5(b)(7). Again, this suggests acquiescence in the conversion.

## IV. CONCLUSION

In conclusion, we hold that (1) the Swampbuster provisions of the United States Code are a proper exercise of Congress' spending power and can therefore reach an intrastate wetland with no connection to interstate commerce; (2) 7 C.F.R. § 12.4(e) is a reasonable interpretation of the underlying statute and therefore valid; (3) the ASCS properly determined that Jerry was the operator of the wetland when it was converted; and (4) the statute and regulations as applied in this case satisfy the requirements of substantive due process.

The decision of the district court is AF-FIRMED.